[No. D003617. Fourth Dist., Div. One. Sept. 14, 1987.]

RAYMOND VALENZUELA, Plaintiff and Appellant, v.
THE STATE OF CALIFORNIA et al., Defendants and Respondents.

**COUNSEL**

Sullivan, Delafield, McDonald & Middendorf and Eric V. Benham for Plaintiff and Appellant.

John K. Van de Kamp, Attorney General, Marvin Goldsmith, Senior Assistant Attorney General, Randall B. Christison, Jeffrey T. Miller and Kristin G. Hogue, Deputy Attorneys General, for Defendants and Respondents.

**OPINION**

**BUTLER, J.**—Raymond Valenzuela sued his employer the State of California (State) and his supervisor, Emil J. Heringer, for damages based on breach of covenant of good faith and fair dealing and intentional and negligent infliction of emotional distress. The court sustained demurrers without leave to amend. He appeals. We affirm.

██ A demurrer admits the truth of all the material allegations in the complaint. We state those allegations.

Valenzuela was a traffic officer employed with the California Highway Patrol. On October 13, 1982, after being subpoenaed, he testified for the plaintiff in a personal injury case involving a claimed dangerous condition of a San Diego County highway. Heringer, a highway patrol captain and Valenzuela's superior, told Valenzuela his testimony jeopardized the county's case and reprimanded him. Valenzuela reported these comments and reprimands to both the plaintiff's attorney and to the judge. Fellow officers monitored Valenzuela's trial testimony in other cases. Heringer continued his campaign of harassment. Valenzuela became agitated and depressed and

could not work. Eventually, the State on January 4, 1984, forced Valenzuela to take disability retirement effective June 11 the same year.

Valenzuela filed a claim for damages for intentional infliction of emotional distress, wrongful termination of employment, and harassment, with the State pursuant to Government Code[1] section 911.2. The claim was denied. He then filed his first complaint for breach of contract, breach of the implied covenant of good faith, wrongful termination and infliction of emotional distress. The State demurred to that complaint. The judge determined Valenzuela had not exhausted his administrative remedies and granted the demurrer with leave to amend. Valenzuela then appealed his retirement with the California State Personnel Board (Board). The claim was denied as untimely.[2] He then filed his first amended complaint pleading exhaustion of retirement administrative remedies and three causes of action for intentional and negligent infliction of emotional distress and breach of the covenant of good faith; the judge granted the State's demurrer without leave to amend and the case was dismissed.

Valenzuela appeals, claiming his action should not have been dismissed as it was not necessary to exhaust any administrative remedies since his complaint is for tort damages which are not available in any administrative proceeding. Furthermore, the cause of action for intentional infliction of emotional distress is not barred by the exclusive remedy provision in the Workers' Compensation Act.[3] We affirm as we determine Valenzuela's remedy lies exclusively within the civil service system and on these facts the Workers' Compensation Act is the exclusive remedy for his claim of intentional infliction of emotional distress.

## I

■ Valenzuela first contends his cause of action against the State for breach of covenant of good faith and fair dealing is not barred even though he did not avail himself of administrative grievance procedures or file a timely administrative appeal regarding his retirement. We disagree.

Employees of the State highway patrol are members of the California civil service system which is created by California's Constitution. (Cal.

---

[1] All statutory references are to the Government Code unless otherwise specified.

[2] The record does not include a copy of the appeal. The Board's response to Valenzuela's lawyer characterized his letter as an appeal, noted June 1, 1984, as the retirement date, observed the appeal was made in March 1985, beyond the period for filing appeals, and stated the Board had no jurisdiction to grant money damages. We assume the appeal restated his claim as set out in the complaint.

[3] Although Valenzuela does not directly inform us, we deem his failure to discuss in his brief the third cause of action for negligent infliction of emotional distress a waiver of any appeal on the issue. (See Lab. Code, § 3600.)

Const., art. VII, § 1; § 18500 et seq.; *Martin* v. *Hendersen* (1953) 40 Cal.2d 583, 589 [255 P.2d 416].) ■ "The terms and conditions of civil service employment are fixed by statute and not by contract" (*Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981]; *Miller* v. *State of California* (1977) 18 Cal.3d 808, 813 [135 Cal.Rptr. 386, 557 P.2d 970]) and a state employee accepts and benefits from numerous employment provisions which include all aspects of hiring, performance, grievances, layoffs, and retirement (*Boren* v. *State Personnel Board, supra,* at p. 639; see generally, 52 Cal.Jur.3d, Public Officers, etc., §§ 2-5, pp. 165-170 and §§ 58-69, pp. 221-234).

■ In the private sector, the covenant of good faith and fair dealing is implied in contracts of employment. (*Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1170-1171 [226 Cal.Rptr. 820]; *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 455 [168 Cal.Rptr. 722].) ■ Valenzuela asks we imply the covenant in his employment as a highway patrolman. The State argues his claim for tort damages for breach of the covenant necessarily fails because the terms and conditions of civil service employment are fixed by statute and not by contract. (Cal. Const., art. VII, § 1; § 18500 et seq.; *Miller* v. *State of California, supra,* 18 Cal.3d 808, 813; *Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, 641.) Thus, absent a contract to which the covenant, limpet-like, may affix, the State declares the covenant may not be implied in state employment. We need not dance on the head of the metaphysical pin of tort damages arising out of contractual relations to resolve the issue before us. Simply stated, the State civil service system requires good faith and fair dealing in the resolution of the inevitable conflicts inherent in the employment relationship and provides remedies to the aggrieved employee for redress of wrongs. Valenzuela did not pursue those remedies.

Section 18500 enumerates the objectives and purposes of the Civil Service Act. It was enacted to facilitate the constitutional mandate, to promote economy and efficiency, and to provide a comprehensive personnel system which balances the rights of the employees "with the best interests of the state."

An aggrieved civil service employee must use all agency administrative procedures, including available appellate review, before otherwise resorting to the courts. (§§ 18500 and 18654.5; *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 295 [109 P.2d 942, 132 A.L.R. 715]; *Edgren* v. *Regents of University of California* (1984) 158 Cal.App.3d 515, 520-522 [205 Cal.Rptr.6]; *McHugh* v. *County of Santa Cruz* (1973) 33 Cal.App.3d 533, 538 [109 Cal.Rptr. 149].)

Section 18714 permits the Board[4] to set out grievance procedures. (Cal. Admin. Code, tit. 2, § 540.1.) Individual departments may establish their own grievance procedures (*op cit. supra*) but standards are prescribed by the rules (*op. cit. supra,* § 540.5). Accordingly, a grievance exists "whenever an employee believes that he/she has in any manner been adversely affected in employment by any action or failure of action by the appointing power, a supervisor, or another employee." (*Op. cit. supra,* § 540.) Section 540.11 of the rules prohibits the appointing power (a department acting as employer) or any person under the appointing power from discouraging another person from using the grievance procedures available. Such conduct may be subject to punitive action.[5] Valenzuela did not pursue this avenue of relief from the claimed harassment by Heringer.

---

[4] The Department of Personnel Administration succeeded the Board in jurisdiction over grievances in September 1985 (§ 19816).

[5] The rules provide in pertinent part: "540.2. Purpose and Objectives. The purpose of establishing a grievance procedure is to afford an employee a means of obtaining consideration of a grievance, with a minimum of formal procedural requirements by the level of management closest to the employee concerned. Every reasonable effort should be made initially by the employee concerned and the employee's immediate supervisor to resolve the grievance informally. If such efforts do not produce a solution, the objectives in following the more formal procedure are first to establish what the facts of the situation are and then to arrive at an appropriate solution under these facts rather than dealing in personalities. To facilitate these objectives, provision is made in the procedure for an appointing power to provide for the facts to be ascertained and a solution recommended, at as early a stage in the procedure as practicable, by someone not involved in the immediate situation or direct line of supervision. " . . . . . . . . . . .

"540.5. Standards. Each grievance procedure shall conform to the following standards: [¶] (a) The employee or the employee's representative shall be required to discuss the grievance with the employee's immediate supervisor before a written grievance may be filed. If the grievance is not settled through this discussion, at the employee's option, it either may be discussed with the next higher supervisor or a written grievance may be filed. [¶] (b) A grievance procedure shall consist of as few levels of review as practicable. No procedure shall provide for more than four levels of review, and the final level of review shall be the appointing power or its designated representative. [¶] (c) At any level of review, preferably at the earliest level practicable, a reviewing committee or officer not in the line of supervision which comprises the levels of review may be appointed in the manner prescribed by the appointing power. This officer or committee shall ascertain and set forth in writing the facts of the particular situation as objectively as possible and recommend a solution to the grievance under these facts. Unless the employee disputes at that time the facts so set forth, they need not be reinquired into. The only level of review thereafter shall be the appointing power or its designated representative. [¶] (d) A decision shall be rendered to an employee in writing at each level of review. An employee who is not satisfied with the written decision on the grievance may, within ten days after receiving such decision, file an appeal in writing for consideration by the next level of review. Unless extended by mutual agreement, the decision shall be given within fifteen days of receipt of the written grievance or an appeal therefrom at any level below that of the appointing power. The decision by the appointing power shall be within twenty days. [¶] (e) Each grievance procedure may provide for referral of a [grievance] by the immediate supervisor or any other level of review considering it to the level of review most capable of answering or resolving the grievance."

Valenzuela by his complaint claims he was "forced" into retirement. The code provides administrative relief when a person is dissatisfied with the circumstances surrounding retirement or a resignation. (See §§ 18654.5, 19996.1, 21026.1, 21026.2, 21026.3, 21026.4, 21026.5 & 21101.) Valenzuela did not appeal his forced retirement or the circumstances surrounding it until it was too late (§ 18654.5).

Valenzuela's allegations regarding Heringer's harassment are eminently suitable for the grievance procedures which may have resolved the controversy before Valenzuela was forced to retire.[6] Additionally, he could have restated his grievances through the retirement process, including the appeal (§ 18654.5). These procedures serve the best interest of the State and are commensurate with the objectives and purposes of the Civil Service Act (§ 18500).

We hold Valenzuela's claim for a breach of the implied covenant of good faith and fair dealing simply restates the obligation of the State to deal fairly and in good faith with its employees as required by statute and administrative rules, and remedies for breach of that obligation are in the administrative procedures provided by the State civil service system, Valenzuela's exclusive remedy as a State civil service employee.[7]

## II

■ Valenzuela's claim for intentional infliction of emotional distress is barred by the exclusive remedy provisions of the Workers' Compensation Act.

Valenzuela was "forced into" or "took" disability retirement; the record before us does not reveal by what process Valenzuela was found to be disabled or exactly how his retirement disability benefits dovetail with workers' compensation. (Lab. Code, § 4800 et seq.; Gov. Code, §§ 20038, 21021, 21026, 21027; see 1 Herlick, Cal. Workers' Compensation Law (3d ed. 1986) §§ 6.26 and 6.27, pp. 162-168; see also *Boyd* v. *City of Santa Ana* (1971) 6 Cal.3d 393 [99 Cal.Rptr. 38, 491 P.2d 830]; *Pasquinelli* v. *State of California* (1975) 45 Cal.App.3d 457 [119 Cal.Rptr. 438].) Apparently, however, Valenzuela's injuries have been compensated through either or both workers' compensation procedures and the Public Employees Retire-

---

[6]Regarding Valenzuela's claim he does not want reinstatement, we do note his original claim pursuant to section 910 specifically states he wants reinstatement; this does *not* appear to be mere surplusage.

[7]Valenzuela's judicial remedies following administrative review are in administrative mandamus. (Code Civ. Proc., § 1094.5.)

ment System. (See Herlick, *op. cit. supra*; Cal. Workers' Compensation Practice (Cont.Ed.Bar 1985) § 3.34, pp. 88-90.)

First, we find workers' compensation *is* an exclusive remedy under the facts here. ██ ██ ██ ██ ██ The Workers' Compensation Act was amended in 1982.[8] (Stats. 1982, ch. 922, pp. 3363-3372, eff. Jan. 1, 1983.) Pre-1983, the statutes provided workers' compensation was the exclusive remedy for accidents and injuries in the workplace. Case law carved out exceptions permitting common law tort causes of action under particular circumstances. (See *1982 California Legislation, Workers' Compensation* (1982) 14 Pacific L.J. 357, 763-764.) Except for new exceptions allowing actions at law for physical injuries sustained in the workplace in specific circumstances, not applicable here (see Lab. Code § 3602), the amendments restate pre-1983 workers' compensation exclusivity. ██ ██ The line of cases explaining exceptions to the exclusivity of the act thus survives the 1982 amendments to the workers' compensation law.

*Renteria* v. *County of Orange* (1978) 82 Cal.App.3d 833 [147 Cal.Rptr. 447] held an employee could recover in a civil action for intentional infliction of emotional distress if the injuries were not otherwise compensable under workers' compensation. Other courts rejected damage claims for intentional infliction of emotional distress when plaintiffs concentrated on and pleaded injuries which were primarily physical. (*Gates* v. *Trans Video Corp.* (1979) 93 Cal.App.3d 196 [155 Cal.Rptr. 486]; *Ankeny* v. *Lockheed Missiles & Space Co.* (1979) 88 Cal.App.3d 531 [151 Cal.Rptr. 828]; see *McGee* v. *McNally* (1981) 119 Cal.App.3d 891, 895 [174 Cal.Rptr. 253].)

*Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 155-157 [233 Cal.Rptr. 308, 729 P.2d 743], acknowledged these cases, distinguishing between the presence or lack of presence of "physical" injuries and determined such distinction was one alternative for finding workers' compensation exclusivity. While *Cole* based its holding on other grounds, we find its language persuasive to our determination a cause of action exists only when the allegations encompass nonphysical distress which is outside the contemplation of the act. This is not such a case. Valenzuela allegedly suffered anxiety, depression, lack of sleep, weight loss, palpitations, insomnia, headaches and earaches and he is now on disability retirement.

*Cole* concluded an action for intentional infliction of emotional distress against an employer arising from conduct which has caused total, permanent, mental and physical disability compensable under workers' compensa-

---

[8] Although part of the alleged harassment here occurred before the effective date of the amendment to the Workers' Compensation Act, part occurred after, and so did the actual retirement; therefore, the amendments apply.

tion is within the exclusive jurisdiction of the Workers' Compensation Appeals Board if the claim is based on conduct normally occurring in the workplace. (*Cole, supra,* 43 Cal.3d 148, 155-157.) Valenzuela's injuries arose from employer harassment at the workplace; Heringer harassed him about his testimony given in a case which was incidental to his employment. The harassment caused his mental and physical injuries necessitating his retirement. Workers' compensation is the exclusive remedy here. (See *Cole* v. *Fair Oaks Fire Protection Dist., supra,* 43 Cal.3d 148; cf. *Hart* v. *National Mortgage & Land Co.* (1987) 189 Cal.App.3d 1420 [235 Cal.Rptr. 68].)

Judgment affirmed.

Wiener, Acting P. J., and Work, J., concurred.