[No. F006551. Fifth Dist. May 5, 1988.]

KEN KEMMERER, Plaintiff and Appellant, v.
COUNTY OF FRESNO et al., Defendants and Respondents.

COUNSEL

Nicholas F. Reyes for Plaintiff and Appellant.

Behrens & Viau and Jerome M. Behrens for Defendants and Respondents.

OPINION

BROWN (G. A.), J.*—Ken Kemmerer, a permanent civil service employee in the Social Services Department of the County of Fresno (County), appeals from a judgment of dismissal of this civil suit for damages against the County of Fresno and two of his superiors following the court's sustaining of the County's and two superiors' general demurrer to his complaint without leave to amend.[1] The individual defendants are Ben J. Kelley, director, and Ernest E. Velasquez, assistant director of social services for the County. This suit followed action by the civil service commission ordering the reinstatement of Kemmerer to his employment and reducing the discipline imposed to a letter of reprimand. We will hold he cannot maintain the suit upon several theories and will affirm the judgment.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairperson of the Judicial Council.

[1]The motion to strike and the granting of the motion were superfluous in light of the general demurrer.

■ ■ ■ ■ FACTS[2]

Kemmerer was hired by the Fresno County Department of Social Services on January 14, 1968. He became a full-time employee under civil service. In 1984, Mr. Zenon Pena and his wife were receiving public assistance from the aid to families with dependent children (AFDC) program through the County. Kemmerer was involved with the In-Home Supportive Services program, not with AFDC. Pena had been a tenant in a building owned by Kemmerer but had left in December of 1983 and still owed Kemmerer money for unpaid rent. Pena admitted owing the rent and said he was trying to pay Kemmerer back.

In April of 1984, Kemmerer contacted Pena's eligibility worker "and told her that one of her cases by the name of Zenon Pena were probably frauding [sic] the county . . . and to be very careful with Mr. Pena because he was supposedly a very difficult individual." Kemmerer contacted her again about 10 days later and informed her that he had spoken to Mr. Pena's father who had told him that Pena did not live with him in Orange Cove as he had reported to the County but was just using the address as a mail drop. Based on the information which she had received from Kemmerer, Pena's eligibility worker took action to terminate his benefits on a "whereabouts unknown" basis.

Pena objected to having his benefits discontinued and steadfastly maintained that he did in fact live with his father at the reported address. Upon subsequent contact by defendant Velasquez, the assistant director of social services for the County, Mr. Pena, Sr., denied ever having spoken to Kemmerer and vouched for the fact that his son did live with him at the Orange Cove address. When Pena discovered that the basis for the termination of his payments was the statements made by Kemmerer, he reported that Kemmerer had contacted his in-laws and "threatened to screw me (Pena) with my welfare check" if Kemmerer was not paid the money owed.

When confronted with the situation, Kemmerer admitted that he had used the internal computer system of the department of social services to ascertain the identity of Pena's case worker, but he did not recognize that a conflict of interest existed in that he was using his position as a social

---

[2] The statement of facts is derived from the allegations of the complaint and from documents filed by defendants in support of their demurrer to the complaint consisting of writings and record of proceedings before the civil service commission in Kemmerer's disciplinary proceeding. The trial court properly took judicial notice of and considered the documentation presented to the civil service commission in ruling on the demurrer. (*Swiss Park, Inc.* v. *City of Duarte* (1982) 136 Cal.App.3d 755, 758 [186 Cal.Rptr. 549].) This court will take judicial notice of the same information. (Evid. Code, § 459.)

worker with access to confidential information in connection with certain private dealings in his capacity as a landlord. He referred to Pena as a "no-good person," a "thief," a "defrauder" and a "bad father." He also maintained that he had not spoken with Mr. Pena's father, as the case worker had understood him to say, but rather had obtained the information that the reported address was just a "mail drop" from Mrs. Pena's father.

Pena then reported to Velasquez that Kemmerer had been the catalyst in having his car repossessed. He claimed that Kemmerer contacted the car dealership which had financed the vehicle and told them that Pena would no longer be able to make payments as his public assistance had been discontinued. Pena claimed that as a result of this information provided to the dealership, his car had been repossessed. This charge was apparently false. The operator of the car dealership denied any conversation with Kemmerer or anyone else from the social services agency. On the advice of counsel, Pena refused to accompany Velasquez to the dealership to discuss the matter further.

After his investigation of the matter, Velasquez concluded that Kemmerer had "violated the oath of confidentiality, denied Mr. Pena due process, deprived Mr. Pena of his only source of income (AFDC Grant) and interfered with the Department's mandates to provide services to eligible individuals in an equitable manner." He recommended that Kemmerer "be dismissed from our department as soon as it is administratively possible."

In accordance with County civil service regulations, Kemmerer was duly notified in writing that the department of social services intended to take disciplinary action against him and was then dismissed from County service effective May 9, 1984. Kemmerer was given all of his preremoval rights as required by *Skelly* v. *State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] before terminating a permanent civil service employee. He promptly filed a notice of appeal to the County civil service commission. A hearing was held before the civil service commission on June 12, 1984. As a result of the hearing, Kemmerer's discipline was reduced from termination of employment to a letter of reprimand which was to be placed in his personnel file. He was reinstated in his position on June 12, 1984, and all backpay and benefits were restored. Thus, he was only out of his position approximately 33 days.

After a claim for damages was filed (Gov. Code, § 910) and rejected, he filed the complaint for damages in the instant case. The complaint is in four alleged causes of action. The first cause of action alleges a breach of an express and implied contract of employment and prays for lost wages,

salary, benefits, and "certain other incidental and consequential expenses and losses."

The second alleged cause of action is based on an alleged breach of an express and implied covenant of good faith and fair dealing arising from the contract of employment alleged in the first cause of action. A number of specific false and malicious statements allegedly made by defendants are stated to be the basis of the termination. He asserts the statements were made without any legitimate basis or reasonable grounds for belief and were knowingly false, resulting in his discharge and as a proximate result of which he "suffered anxiety, worry, mental, physical, and emotional distress, and other incidental and consequential damages . . . ." He also prays for punitive damages.

The third cause of action is one for intentionally caused mental and emotional distress as a proximate result of which "plaintiff has suffered humiliation, mental anguish, and emotional and physical distress, all to plaintiff's damage . . . ."

The fourth cause of action is predicated upon allegations that Kelley and Velasquez intentionally induced the County to breach his contract of employment with the County and to discharge the plaintiff.

## DISCUSSION

■ Plaintiff's causes of action predicated upon the existence of a contract between him and the County are grounded upon the false premise that he served under a contract of employment which included an implied covenant of good faith and fair dealing. However, ". . . it is well settled in California that public employment is not held by contract but by statute . . . . Nor is any vested contractual right conferred on the public employee because he occupies a civil service position since it is equally well settled that '[t]he terms and conditions of civil service employment are fixed by statute and not by contract.' [Citations.] Indeed, '[t]he statutory provisions controlling the terms and conditions of civil service employment cannot be circumvented by purported contracts in conflict therewith.'" (*Miller* v. *State of California* (1977) 18 Cal.3d 808, 813-814 [135 Cal.Rptr. 386, 557 P.2d 970]; see also *Boren* v. *State Personnel Board* (1951) 37 Cal.2d 634, 641 [234 P.2d 981]; *Valenzuela* v. *State of California* (1987) 194 Cal.App.3d 916, 920 [240 Cal.Rptr. 45].)

"The public employee, thus, can have no vested contractual right in the *terms* of his or her employment, such terms being subject to change by the

proper statutory authority." *(Hinchliffe* v. *City of San Diego* (1985) 165 Cal.App.3d 722, 725 [211 Cal.Rptr. 560].)

In *Valenzuela* v. *State of California, supra,* 194 Cal.App.3d at page 920, the court stated: "In the private sector, the covenant of good faith and fair dealing is implied in contracts of employment. (*Koehrer* v. *Superior Court* (1986) 181 Cal.App.3d 1155, 1170-1171 [226 Cal.Rptr. 820]; *Khanna* v. *Microdata Corp.* (1985) 170 Cal.App.3d 250, 262 [215 Cal.Rptr. 860]; *Cleary* v. *American Airlines, Inc.* (1980) 111 Cal.App.3d 443, 455 [168 Cal.Rptr. 722].) Valenzuela asks we imply the covenant in his employment as a highway patrolman. The State argues his claim for tort damages for breach of the covenant necessarily fails because the terms and conditions of civil service employment are fixed by statute and not by contract. (Cal. Const., art. VII, § 1; Gov. Code, § 18500 et seq.; *Miller* v. *State of California, supra,* 18 Cal.3d 808, 813; *Boren* v. *State Personnel Board, supra,* 37 Cal.2d 634, 641.) Thus, absent a contract to which the covenant, limpet-like, may affix, the State declares the covenant may not be implied in state employment. We need not dance on the head of the metaphysical pin of tort damages arising out of contractual relations to resolve the issue before us. Simply stated, the State civil service system requires good faith and fair dealing in the resolution of the inevitable conflicts inherent in the employment relationship and provides remedies to the aggrieved employee for redress of wrongs. Valenzuela did not pursue those remedies.

"Government Code section 18500 enumerates the objectives and purposes of the Civil Service Act. It was enacted to facilitate the constitutional mandate, to promote economy and efficiency, and to provide a comprehensive personnel system which balances the rights of the employees 'with the best interests of the state.' "

Kemmerer had the benefit of the statutory civil service system by having his appeal from his termination promptly heard and by being promptly reinstated to his former position with full back pay and benefits. He cannot now assert that he does not serve by grace of the statutory scheme which righted the wrong done him and bring an action based upon an asserted contract of employment.

The cases of *Walker* v. *Northern San Diego County Hospital Dist.* (1982) 135 Cal.App.3d 896 [185 Cal.Rptr. 617] and *Youngman* v. *Nevada Irrigation Dist.* (1969) 70 Cal.2d 240 [74 Cal.Rptr. 398, 449 P.2d 462], relied upon by plaintiff, are clearly distinguishable. In the *Walker* case, the plaintiff was not a statutory service employee. She was a nurse who worked for a hospital formed pursuant to the Local Hospital District Law, Health and Safety Code section 32000 et seq. Under Health and Safety Code sections 32121.5

and 32129, contracts with various professionals are specifically authorized. The plaintiff in that case was not a civil service employee. The court did not discuss the issue which is now before this court. Similarly, *Youngman* deals with an employee who was outside the civil service system. The employer irrigation district was a public agency organized under section 20500 et seq. of the Water Code wherein the district was expressly granted powers to contract with employees. The issue before this court was not discussed.

Plaintiff also relies on *Read* v. *City of Lynwood* (1985) 173 Cal.App.3d 437 [219 Cal.Rptr. 26], where the issue of civil service was not discussed. There the plaintiff had been hired as a development division manager and subsequently accepted a probationary appointment as the community development director. She failed to pass her new probationary period but could not return to her old job as the position had been eliminated. The opinion did not deal with the issue of whether she was part of the civil service system or enjoyed some other status. Nor did the court discuss the Supreme Court or other cases we have set forth and discussed above disallowing judicial remedies independent of that afforded pursuant to the civil service system. The court cites no authority involving a public employee for its offhand assertion that a public employee may maintain a wrongful discharge suit. Insofar as the opinion may be construed to authorize a public employee to seek a judicial remedy for wrongful discharge, we believe it is inconsistent with Supreme Court and other cases on the subject and we decline to follow it.[3]

---

[3] During argument, plaintiff cited *Green* v. *City of Oceanside* (1987) 194 Cal.App.3d 212 [239 Cal.Rptr. 470]. Indeed, in that case, the court affirmed a damage award on a jury verdict rendered for emotional distress arising from alleged wrongful discharge. However, for reasons of which we are not fully aware the city admitted that the suit could be maintained against the city. Consequently, neither the trial nor appellate court confronted or discussed this issue.

On page 225, the opinion states: ". . . City admitted Green was hired to fill a permanent position subject to termination only for just cause.[5] City also admitted the covenant of good faith and fair dealing applied to the employment relationship. Thus the jury's function was to determine whether Green was discharged for reasons other than just cause." Footnote 5 states: "In the course of the trial City conceded there was a contract of employment between the City and the Employees Association. Because of this fact and City's other concessions noted above, we reject the argument made by amicus on behalf of the Legal Advocacy Committee of the League of California Cities that a public employee cannot state a cause of action for breach of contract or for breach of the covenant of good faith and fair dealing. Our rejection of this argument is solely due to the factual posture of this case and should not be construed as our expression that as a matter of law public employees have identical rights and/or remedies for wrongful termination as private employees."

A clue to the city's reasons for waiving the issue may be found in the court's remarks at page 217.

". . . The apparent weakness of plaintiff's case may explain why the City decided to forego technical defenses in order to submit the matter on the merits to 12 persons representing the collective conscience of the community. From a political perspective this was probably a

It follows that the demurrer to the first, second and fourth causes of action, all being predicated upon the existence of a contract of employment between County and Kemmerer, was properly sustained without leave to amend.

■ Turning to the third cause of action (intentional infliction of emotional distress) and also the second and fourth causes of action insofar as they involve a tort theory of liability, the County and Kelley and Velasquez were immune from liability under the provisions of Government Code sections 820.2 and 821.6.

■ Though these sections were not originally raised by the parties, governmental immunity is a jurisdictional question and may be raised on appeal even though not used as a basis for the general demurrer in the lower court. (*Buford* v. *State of California* (1980) 104 Cal.App.3d 811, 826 [164 Cal.Rptr. 264].) Supplemental briefs were requested and received from the parties on the issue of the applicability of Government Code sections 820.2 and 821.6.

■ Plaintiff has also asserted that he should be granted leave to amend so he may adequately address the immunity issues in his pleadings. This argument has no merit in the light of the records which were and are judicially noticed. The documentation presented to the civil service commission, which was before the lower court, establishes the applicability of these immunities.

Government Code section 821.6 states: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

Government Code section 820.2 reads: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

■ Though sections 821.6 and 820.2 expressly immunize only the employee, if the employee is immune, so too is the County. (Gov. Code, § 815.2, subd. (b); *Kayfetz* v. *State of California* (1984) 156 Cal.App.3d 491, 496 [203 Cal.Rptr. 33].)

thoughtful and socially healthy decision. From a legal perspective, however, it eviscerated City's principal arguments in this appeal. . . ."
 Accordingly, we put no weight upon this decision as having any precedential value.

■ Although Government Code section 821.6 has primarily been applied to immunize prosecuting attorneys and other similar individuals, this section is not restricted to legally trained personnel but applies to all employees of a public entity. (*Johnson* v. *City of Pacifica* (1970) 4 Cal.App.3d 82, 85 [84 Cal. Rptr 246].) ■ Neither is the section "limited to suits for damages for malicious prosecution, although that is a principal use of the statute." (*Kayfetz* v. *State of California, supra,* 156 Cal.App.3d at p. 497; accord *Citizens Capital Corp.* v. *Spohn* (1982) 133 Cal.App.3d 887, 889 [184 Cal.Rptr. 269].)

In *Kayfetz,* the court applied Government Code section 821.6 to a situation in which plaintiff, a doctor, had sued the State of California, the Board of Medical Quality Assurance, the Physicians Diversion Program and the diversion program administrator for damages arising from the publication of disciplinary action taken against him. The court held the publication was an integral part of the prosecution process and that "Government Code section 821.6 cloaks the action in immunity . . ." (*id.* at p. 494) and therefore the trial court had properly sustained the defendants' demurrer without leave to amend.

Similarly, in *Citizens Capital Corp.* v. *Spohn, supra,* 133 Cal.App.3d 887, the provision was successfully applied in a situation where a litigant brought an action against the Director of the Department of Consumer Affairs who had instituted proceedings to revoke his license to operate a collection agency. The plaintiff alleged that the department had conspired with others to destroy plaintiff's business as a collection agency by instituting widespread publicity charging plaintiff with improper conduct in operating its business and instituting proceedings to revoke plaintiff's license. The court affirmed an order dismissing the complaint after sustaining a general demurrer without leave to amend. The court held that under Government Code section 821.6 the defendants were immune from liability for the publicity reporting the results of their *official investigation* of collection agencies and license revocation actions based on those investigations. (*Id.* at p. 889.)

In the instant case, Kelley initiated formal disciplinary proceedings against Kemmerer after Velasquez conducted an investigation and filed an interoffice memorandum detailing the investigation and recommending dismissal of Kemmerer. The report was dated April 27, 1984. As the director of the department of social services, the institution of proceedings by Kelley would be within the scope of his employment. The procedures included a formal notice and opportunity for hearing with full appeal rights to the Fresno County Civil Service Commission. The investigation by Assistant Director Velasquez was an essential step to the institution of the

disciplinary process and is also cloaked with immunity. The investigation, the preliminary notice and the proceedings before the civil service commission come within the scope of an "administrative proceeding" as that term is used in Government Code section 821.6. It follows that pursuant to section 821.6, Kelley, Velasquez and the County are immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding.

We turn now to Government Code section 820.2. This court has explained that "[g]overnmental immunity for liability for discretionary acts performed by public officers and employees in the exercise of their discretion has long been recognized in this state by judicial interpretation and is based on salutary public policy." (*Burgdorf* v. *Funder* (1966) 246 Cal.App.2d 443, 448 [54 Cal.Rptr. 805].) ▆ In *Burgdorf* we went on to state: "Generally speaking, a discretionary act is one which requires the exercise of judgment or choice. Discretion has also been defined as meaning equitable decision of what is just and proper under the circumstances. [Citation.] It is not, however, possible to set forth a definitive rule which will resolve every case, and other factors must also be considered as, for example, the importance to the public of the function involved. [Citation.]" (*Id.* at p. 449.)

The importance of public policy in the determination of the difference between discretionary acts, which are accorded immunity, and ministerial acts, which are not, was discussed in *Lipman* v. *Brisbane Elementary Sch. Dist.* (1961) 55 Cal.2d 224 [11 Cal.Rptr. 97, 359 P.2d 465]. There, our Supreme Court explained that "[b]ecause of important policy considerations, the rule has become established that government officials are not personally liable for their discretionary acts within the scope of their authority even though it is alleged that their conduct was malicious. [Citations.] The subjection of officials, the innocent as well as the guilty, to the burden of a trial and to the danger of its outcome would impair their zeal in the performance of their functions, and it is better to leave the injury unredressed than to subject honest officials to the constant dread of retaliation. [Citation.]" (*Id.* at p. 229.)

*Lipman* rejected a purely mechanical analysis of "discretionary" in favor of greater reliance on the policy considerations relevant to the purpose of granting immunity to the governmental agency whose employees act in discretionary capacities.[4]

---

[4]The Legislature in adopting Government Code section 820.2 in 1963 specifically approved the *Lipman* approach. (*Johnson* v. *State of California* (1968) 69 Cal.2d 782, 789, fn. 4 [73 Cal.Rptr. 240, 447 P.2d 352].)

*Johnson* v. *State of California, supra,* 69 Cal.2d 782 [73 Cal.Rptr. 240, 447 P.2d 352], a leading case in this area, expressly approved the *Lipman* approach (*id.* at pp. 794-795) and expanded upon the concept stating: "In drawing the line between the immune 'discretionary' decision and the unprotected ministerial act we recognize both the difficulty and the limited function of such distinction. As we said in *Lipman* v. *Brisbane Elementary Sch. Dist., supra,* 55 Cal.2d 224, 230, 'it may not be possible to set forth a definite rule which would determine in every instance whether a governmental agency is liable.' A workable definition nevertheless will be one that recognizes that '[m]uch of what is done by officers and employees of the government must remain beyond the range of judicial inquiry.' (3 Davis, Administrative Law Treatise (1958) § 25.11, p. 484); obviously 'it is not a tort for government to govern' (*Dalehite* v. *United States* (1953) 346 U.S. 15, 57 [97 L.Ed. 1427, 1452, 73 S.Ct. 956] (Jackson, J., dis.)). Courts and commentators have therefore centered their attention on an assurance of judicial abstention in areas in which the responsibility for *basic policy decisions* has been committed to coordinate branches of government. Any wider judicial review, we believe, would place the court in the unseemly position of determining the propriety of decisions expressly entrusted to a coordinate branch of government. Moreover, the potentiality of such review might even in the first instance affect the coordinate body's decision-making process." (*Id.* at p. 793; see also *Lopez* v. *Southern Cal. Rapid Transit Dist.* (1985) 40 Cal.3d 780, 793 [221 Cal.Rptr. 840, 710 P.2d 907].)

As one example, the court posited that the decision to parole a prisoner is definitely a discretionary decision entitled to immunity while subsequent ministerial action taken to implement that policy such as placing a parolee in a particular foster home without warning the foster parents of the dangerous propensity of the parolee would not be immune. On page 796 of the opinion, the court cites a number of other situations from the federal sphere where the initial decision is discretionary but the subsequent decisions relative to the implementation of the discretionary decision are ministerial.

 We have no doubt that this analysis leads inevitably to the conclusion in the case at bench that the decision of Kelley and Velasquez to institute disciplinary proceedings against Kemmerer was a policy decision involving the exercise of discretion entitling them to immunity under Government Code section 820.2. The decision whether or not to initiate disciplinary proceedings and what discipline to impose is placed initially on the department head and the decision is entirely within his discretion. The decision involves the exercise of analysis and judgment as to what is just and proper under the circumstances and is not a purely ministerial act.

Further, there are strong policy considerations in favor of upholding immunity. Kelley and Velasquez investigated allegations of misconduct on

the part of Kemmerer, allegations which were later found to be partially true by the civil service commission although it did reduce the disciplinary action taken. They then made the recommendation that he be dismissed from County service. If every public entity employee who was found to have committed an act of misconduct and later disciplined were allowed to bring a tort action against his coworkers and superiors, this would certainly bode ill for the continuing efficiency and morale of the civil service system. Supervisors within the civil service system would not be able to fulfill their function without the overhanging threat of legal action from employees who become subject to discipline.

We have found no cases squarely deciding that the decision to commence disciplinary proceedings against an employee is a discretionary act. However, the language in *Tietz* v. *Los Angeles Unified Sch. Dist.* (1965) 238 Cal.App.2d 905, 908-911 [48 Cal.Rptr. 245], and *Runyon* v. *Superior Court* (1986) 187 Cal.App.3d 878, 882 [232 Cal.Rptr. 101], albeit dicta, does support our conclusion.

Insofar as the acts and conduct of the social services department employees who implemented the policy decision may have involved ministerial acts within the meaning of *Johnson* v. *Superior Court, supra,* 69 Cal.2d 782, those employees and the County are shielded from liability under the immunity established by Government Code section 821.6 hereinabove discussed in detail.

■ Insofar as written and oral statements or other publications may have been made in the implementation of the policy decision to undertake disciplinary proceedings and which may have involved ministerial acts, the employees are protected by the privilege for publication made in connection with official proceedings contained in Civil Code section 47, subdivision 2. That subdivision, in pertinent part, defines a privileged publication or broadcast made " . . . (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant [to a writ of mandate] . . . ."

The civil service commission hearings were hearings falling within parts (3) and (4) of Civil Code section 47, subdivision 2, and the participants in those proceedings were entitled to the benefits of those provisions.

Further, "[t]he absolute privilege in California is 'not limited to the pleadings, the oral or written evidence, to publications in open court or in briefs or affidavits.' " (*King* v. *Borges* (1972) 28 Cal.App.3d 27, 33 [104 Cal.Rptr. 414].) In *King,* the court was concerned with a communication to the California Division of Real Estate. It concluded that "a communication

to an official administrative agency, which communication is designed to prompt action by that agency, is as much a part of the 'official proceeding' as a communication made after the proceedings have commenced." (*Id.* at p. 34.)

Similarly, in *Long* v. *Pinto* (1981) 126 Cal.App.3d 946 [179 Cal.Rptr. 182], the court looked at a situation in which a letter from one doctor concerning the performance of another doctor had been sent not only to the State Board of Medical Examiners but also to the board of directors of the hospital where the doctor who was the subject of the inquiry had sought staff privileges. The court held that not only was the communication to the State Board privileged, but the communication to the hospital board was absolutely privileged as well.

■ Moreover, the privilege is not limited to defamation actions but applies to other tort actions as well. (*Oren Royal Oaks Venture* v. *Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1164 [232 Cal.Rptr. 567, 728 P.2d 1202].)

The case of *Agostini* v. *Strycula* (1965) 231 Cal.App.2d 804 [42 Cal.Rptr. 314] is on point. There, a dismissed city employee brought an action against other city employees for alleged interference with civil service contract relations and intentional infliction of emotional distress.

The trial court sustained defendants' demurrer without leave to amend, and the appellate court affirmed, explaining: "It is apparent from the record before us that appellant cannot state any cause of action for an alleged intentional infliction of emotional distress. Appellant's claims are based upon statements made by respondents in connection with charges against him, questioning his suitability for the discharge of his duties as a supervisor of children. Each of the respondents is also involved in the care and protection of children coming under the jurisdiction of the juvenile court. When called as a witness, each was under a duty to state fully and fairly such facts as were within his knowledge bearing upon the subject under investigation. In actions for defamation, statements made in an official proceeding authorized by law are privileged. (Civ. Code, § 47, subd. 2.) We recognize, of course, that appellant has not attempted to state a cause of action for defamation. Nevertheless, the statements complained of here were made by respondents in the course of an official proceeding, and privilege, analogous to that described in Civil Code section 47, subdivision 2, protects them from liability for a claimed intentional infliction of emotional distress as a result of such statements.

" . . . . . . . . . . . . . . . . . .

". . . Appellant argues that respondents' conduct induced the City and County of San Francisco to breach its contract of employment with him and that respondents are liable for such conduct. [Citation.] Here no cause of action is or can be stated. To be actionable, inducement of breach must be unprivileged. [Citation.] The same privilege which respondents successfully assert against the charge of wrongful infliction of emotional distress protects them against the charge of wrongfully inducing the City and County of San Francisco to breach its contract of employment with appellant." (*Id.* at pp. 808-809.)

A long line of cases has upheld the *Agostini* rule. (See *Pettitt* v. *Levy* (1972) 28 Cal.App.3d 484, 488-489 [104 Cal.Rptr. 650]; *Brody* v. *Montalbano* (1978) 87 Cal.App.3d 725, 738-739 [151 Cal.Rptr. 206]; *Flynn* v. *Higham* (1983) 149 Cal.App.3d 677, 682 [197 Cal.Rptr. 145].)

Accordingly, we hold the written and oral statements and publications of Kelley and Velasquez reasonably related to the civil service commission proceedings and investigation were privileged and cannot form the basis of tort liability.

In light of our affirmance on other grounds we need not reach or decide defendants' other contentions for affirmance, including an alleged failure of Kemmerer to exhaust his administrative remedies (see *City of Fresno* v. *Superior Court (Santos)* (1987) 188 Cal.App.3d 1484 [234 Cal.Rptr. 136]) and that the damage claims are barred by the exclusive remedy provisions of the Workers' Compensation Act (Lab. Code, § 3200 et seq.). (See *Cole* v. *Fair Oaks Fire Protection Dist.* (1987) 43 Cal.3d 148, 151 [233 Cal.Rptr. 308, 729 P.2d 743]; *Valenzuela* v. *State of California, supra,* 194 Cal.App.3d at pp. 923-924.)

The judgment is affirmed. Costs are awarded to respondents.

Woolpert, Acting P. J., and Best, J., concurred.