[No. A110543. First Dist., Div. One. Jan. 24, 2007.]

GEORGE W. ROSS, JR., Plaintiff and Appellant, v.
SAN FRANCISCO BAY AREA RAPID TRANSIT DISTRICT, Defendant
and Respondent.

**[CERTIFIED FOR PARTIAL PUBLICATION\*]**

---

\*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified
for publication with the exception of parts II.B. and II.C.

1508

COUNSEL

Law Offices of Joan Wolff, Joan Wolff; and Michael Couzens for Plaintiff and Appellant.

Thomas C. Lee for Defendant and Respondent.

OPINION

**MARGULIES, J.**—George W. Ross, Jr., sued the San Francisco Bay Area Rapid Transit District (BART) for wrongful termination in violation of public policy and for age and disability discrimination in violation of the Fair Employment and Housing Act (FEHA) (Gov. Code, § 12940 et seq.).[1] He appeals from a summary judgment in favor of BART, asserting that there are triable issues of material fact with regard to each of his causes of action. We find that summary judgment was properly granted and affirm the judgment.

## I.  BACKGROUND

After 26 years of employment with BART, Ross retired from his position as a central maintenance supervisor in September 2003. At the time of his retirement Ross was 57 years old and on disability leave. BART had notified him in February 2002 that it was terminating his employment for dereliction and negligence in the performance of his duties. It later rescinded the termination notice and suspended Ross for 45 days to take effect when he returned from his disability leave. Ross filed for a voluntary retirement after unsuccessfully attempting to negotiate a stay of the suspension pending arbitration.

In September 2002, Ross filed a complaint under FEHA alleging that he was fired because he was "the oldest on [his] job," had "unionized lower

---

[1] All statutory references are to the Government Code unless otherwise indicated.

management," and was "36.5% disabled." He received a right-to-sue letter under FEHA in October 2002.

## A. First Amended Complaint

Ross sued BART in August 2003. His first amended complaint alleged four causes of action: (1) wrongful discharge in violation of public policy; (2) age discrimination in violation of FEHA; (3) failure to accommodate his disability in violation of FEHA; and (4) discrimination, failure to reasonably accommodate, and retaliation in violation of public policy.

Ross alleged the following relevant facts: On December 20, 2001, Ross was staffing BART's trouble desk for part of the day, taking alternating two-hour shifts with another supervisor. During the morning, the other supervisor on duty had several confrontations with technicians over a BART directive that they wear orange vests in addition to their regular uniforms, but Ross had no such confrontations.[2] Three mainline technicians left their shifts that morning, claiming to be sick.

Ross was interviewed three times concerning the events of December 20. Believing he had done nothing wrong, he refused to sign a prepared admission that he had been untruthful and uncooperative. After BART gave him notice of a termination hearing, Ross filed for stress disability. Ross did not appear at the termination hearing, believing that he was not allowed onto BART property while on disability leave.[3] The hearing officer found that Ross was responsible for a work stoppage on December 20, and upheld BART's recommendation that Ross be discharged from his employment. Because a discharge during disability leave was illegal, BART reduced the sanction from dismissal to 45 days' suspension, but refused to stay the penalty or arbitrate Ross's grievance over the suspension until he first served out a 45-working-day suspension without pay.

Ross was terminated, in whole or in part, (1) in retaliation for giving truthful testimony in a disciplinary hearing against one of the technicians who left work on December 20, and (2) due to his age.

---

[2] After September 11, 2001, BART management directed all BART employees who worked in the public eye to wear orange safety vests so that they would be more visible to BART patrons, thereby reassuring the public and making it appear that more employees were present in BART's public facilities. Some BART employees objected to the policy on the grounds that the vests would make them targets of criminal or other antisocial behavior.

[3] Ross was represented by union representatives at the hearing.

A psychiatrist recommended by BART's insurance carrier concluded that Ross was partially disabled as the result of job stress arising out of the termination incident. Ross's disability limited his ability to work at his old job without accommodations, but BART made no effort to investigate his impairment or negotiate appropriate accommodations. Ross reasonably concluded that BART would not offer him reemployment in a position commensurate with his background, experience, and mental state.

By, among other things, falsely accusing him of causing a work stoppage, conducting a hearing and firing him while he was on disability leave, and knowingly permitting intolerable working conditions, BART constructively discharged him from employment, and wrongfully discharged him in violation of public policy (first cause of action).

BART also discriminated against Ross based on his age in violation of FEHA (second cause of action) by (1) punishing him for acts and omissions that were not punished when committed by younger workers in the same category; (2) filling his position with younger, less qualified individuals; and (3) attempting to force him to retire by spreading rumors that he had retired or intended to retire.

BART failed to reasonably accommodate Ross's disability in violation of FEHA (third cause of action) by (1) conditioning his return to work on proof that he could perform his old job and refusing to negotiate accommodations for his disability, (2) convening a hearing during his disability leave, and (3) refusing to stay his 45-day suspension.

By acting as alleged, BART also violated the public policies of this state prohibiting age and disability discrimination by employers, requiring employers to make reasonable accommodations for the disabilities of their employees, and prohibiting employers from retaliating against employees for pursuing claims of discrimination, giving truthful testimony in an internal investigation, or organizing unions (fourth cause of action).

B. *Proceedings on BART's Summary Judgment Motion*

BART moved for summary judgment or, in the alternative, for summary adjudication, asserting that there was no triable issue of material fact with respect to the following issues: (1) Ross's first and fourth causes of action for wrongful discharge in violation of public policy are barred by BART's statutory immunity under sections 815.2, subdivision (b)[4] and

---

[4] Section 815.2 provides: "(a) A public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that

821.6;[5] (2) Ross's second cause of action for age discrimination in violation of FEHA has no merit because Ross could not establish a constructive discharge or adverse employment action; (3) Ross's second cause of action also fails because BART had a legitimate, non-age-based reason for its challenged action and there was no substantial evidence that its stated reason was pretextual; and (4) Ross's third cause of action for failure to accommodate his disability is barred because his administrative complaint to the FEHA enforcement agency, the Department of Fair Employment and Housing (DFEH), failed to provide adequate notice of this claim, and Ross had therefore failed to timely exhaust his administrative remedies.

The trial court granted summary adjudication as to Ross's second cause of action on the ground that he had failed to come forward with a prima facie showing of age discrimination in response to BART's motion. The court denied summary adjudication of Ross's other causes of action, and denied summary judgment. Regarding the first and fourth causes of action, the court found that (1) the immunity afforded to public employees under section 821.6 was inapplicable; (2) there were triable issues of material fact as to whether Ross suffered an adverse employment action; and (3) there were triable issues of material fact as to whether BART disciplined or retaliated against Ross due to his participation in a disciplinary proceeding against another employee, and whether BART's actions were based on an improper motive or were pretextual. The court denied summary judgment on Ross's third cause of action on the ground that there was a triable issue of material fact as to whether Ross's notation on his FEHA complaint that he was "36.5% disabled" provided sufficient notice to DFEH to exhaust his administrative remedies as to BART's asserted failure to accommodate his disability.

BART petitioned for writ of mandate to this court, seeking an order directing the trial court to grant its motion for summary adjudication of Ross's first, third, and fourth causes of action. We issued an alternative writ directing the trial court to either set aside its order denying summary adjudication of these causes of action and grant summary adjudication of them, or to show cause why it had not done so. In the alternative writ, we stated that (1) BART was immune from liability on Ross's first and fourth

---

employee or his personal representative. [¶] (b) Except as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability."

[5] Section 821.6 immunizes public employees from liability for wrongfully initiating an administrative proceeding without probable cause: "A public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

causes of action under sections 815.2 and 821.6; and (2) as a matter of law, Ross failed to exhaust his administrative remedies with regard to his third cause of action because his FEHA complaint did not provide sufficient notice to the enforcing agency of the conduct alleged in that cause of action.

In light of the alternative writ, the trial court vacated the portions of its previous order denying summary adjudication of the first, third, and fourth causes of action, granted summary adjudication on these causes of action, and granted summary judgment in favor of BART. We dissolved the alternative writ, and dismissed BART's writ petition as moot.[6]

The trial court entered judgment in favor of BART on May 4, 2005, and this timely appeal followed.

## II. DISCUSSION

### A. *Wrongful Termination in Violation of Public Policy*

Ross contends that section 815.2, subdivision (b) provides immunity to a public entity only for its *vicarious* liability for the wrongs of its employees, but not for its own *direct* liability. According to Ross, the common law torts of discrimination or wrongful termination in violation of public policy create *direct* employer liability that, in the case of a public entity employer, is unaffected by section 815.2 or 821.6. He insists that the fact that BART held a disciplinary hearing before taking action against him therefore affords BART no statutory shield from its direct liability for his injuries under the first and fourth causes of action of Ross's first amended complaint.

In our view, Ross's analysis fails to recognize a fundamental distinction between common law tort claims such as those pleaded in his first and fourth causes of action, and the statutory FEHA violation claims alleged in his second and third causes of action. BART can have no direct liability *except* as provided by statute. Section 815 specifies that "[*e*]*xcept as otherwise provided by statute*: [¶] . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." (§ 815, subd. (a), italics added.) As stated in *Caldwell v. Montoya* (1995) 10 Cal.4th 972 [42 Cal.Rptr.2d

---

[6] BART properly concedes that, absent a written opinion following issuance of the alternative writ, this court's reasoning in issuing the alternative writ is not the law of the case for purposes of this appeal. (See *Kowis v. Howard* (1992) 3 Cal.4th 888, 893–894 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

842, 897 P.2d 1320] (*Caldwell*), section 815 establishes "the basic rule[] that public entities are immune from liability except as provided by statute." (*Caldwell*, at p. 980, italics omitted.) Thus, when it comes to common law tort injuries, BART's liability can *only* be predicated on its vicarious liability, if any, for the wrongful acts of its employees, as authorized by section 815.2, subdivision (a).

In *Tameny v. Atlantic Richfield Co.* (1980) 27 Cal.3d 167 [164 Cal.Rptr. 839, 610 P.2d 1330] (*Tameny*), the California Supreme Court recognized that a common law tort action might lie if the employer discharges an employee for reasons that are violative of a firmly established public policy. (*Foley v. Interactive Data Corp.* (1988) 47 Cal.3d 654, 666–667, 668 [254 Cal.Rptr. 211, 765 P.2d 373].) As the high court later explained, "because there was no statute specifically barring an employer from terminating an employee who refused to act illegally, the court [in *Tameny*] was required to consider whether, *without the authority of an express prohibition on the reasons for discharge*, the plaintiff's action could proceed." (*Foley*, at p. 668, italics added.) Thus, so-called *Tameny* claims—based on employer conduct in derogation of important public policies—have been defined from their inception to exclude claims that are entirely redundant to those authorized by statute. (See also *Rojo v. Kliger* (1990) 52 Cal.3d 65, 73–82, 89 [276 Cal.Rptr. 130, 801 P.2d 373] [independent common law claim of tortious discharge in violation of public policy does not duplicate FEHA rights and remedies].) Since a public entity has no direct liability for its acts or omissions *except as provided by statute* (§ 815, subd. (a)), it follows that in the case of a *Tameny* claim against a public entity, the entity is liable, if at all, only vicariously, and that it is immune from liability to the extent that its employees are immune.

In support of his claim that the governmental immunity statutes are inapplicable to his *Tameny* claims, Ross cites *Caldwell*. But *Caldwell* merely suggests in a footnote that a FEHA *statutory* claim can be maintained against a public entity even though its agents or employees are immune from liability. (*Caldwell, supra,* 10 Cal.4th at p. 989, fn. 9 ["Nothing we say here is intended to imply that because the individual board members are immune, plaintiff's FEHA claim against [the school district itself] is also barred"].) The court found that a school district's elected board members were immune from liability for terminating the superintendent's employment under both common law and FEHA causes of action because the termination was an exercise of the discretion vested in the board. (*Caldwell*, at p. 978, applying

§ 820.2.)[7] The issue of the school district's immunity from *common law liability* was not mentioned or discussed in the case.

Ross correctly points out that FEHA's general prohibition against age discrimination in employment has been held to be sufficiently substantial to support a *Tameny* claim for wrongful termination, and that disability discrimination can form the basis of a common law wrongful discharge claim against a public agency. (See *Stevenson v. Superior Court* (1997) 16 Cal.4th 880, 890 [66 Cal.Rptr.2d 888, 941 P.2d 1157]; *City of Moorpark v. Superior Court* (1998) 18 Cal.4th 1143, 1161 [77 Cal.Rptr.2d 445, 959 P.2d 752] (*City of Moorpark*).) The dispositive question here is whether these claims come within the scope of section 821.6 in the factual circumstances of this case.

*Shoemaker v. Myers* (1992) 2 Cal.App.4th 1407 [4 Cal.Rptr.2d 203] (*Shoemaker*) is instructive on this question. Shoemaker sued the State of California and various state officials and employees after he was terminated from his job as an investigator for the Department of Health Services (DHS), allegedly in retaliation for exposing wrongdoing by DHS officials. (*Id.* at p. 1415.) Shoemaker alleged that an outside psychiatrist had erroneously blamed him for harassing two of his patients, and that his DHS supervisors interrogated him repeatedly about the charges and then fired him for insubordination when he refused to answer further questions unless he had legal representation. (*Id.* at pp. 1414–1415.) Shoemaker alleged that DHS officials made statements to the effect that they knew the termination was not proper, but went out of their way to cause him as much trouble as possible. (*Id.* at p. 1415.)

Among other claims, Shoemaker asserted a *Tameny* cause of action for wrongful termination in violation of public policy and a claim for damages under a special statute protecting whistleblowers. (*Shoemaker, supra,* 2 Cal.App.4th at pp. 1416, 1419.) The Court of Appeal held that the *Tameny* claim was barred by section 821.6. (*Shoemaker,* at pp. 1424–1425.) For this, the court relied on two earlier cases, *Hardy v. Vial* (1957) 48 Cal.2d 577 [311 P.2d 494] (*Hardy*) and *Kemmerer v. County of Fresno* (1988) 200 Cal.App.3d 1426 [246 Cal.Rptr. 609] (*Kemmerer*), that applied section 821.6 (or its common law predecessor) to wrongful discharge claims arising in the public sector.

---

[7] The *Caldwell* court assumed without deciding that viable FEHA causes of action could otherwise be stated against the board members. (*Caldwell, supra,* 10 Cal.4th at pp. 978–979, fn. 3.)

*Hardy* involved a state college professor who was discharged based on false allegations of misconduct. (*Hardy, supra,* 48 Cal.2d at p. 580.) After a hearing, the State Personnel Board found that the charges were untrue and that the grounds for the dismissal were not sustained by the evidence. (*Ibid.*) The Supreme Court held that the plaintiff's claims were cognizable under the rule that "an action for malicious prosecution may be founded upon the institution of a proceeding before an administrative agency." (*Id.* at p. 581.) However, the court found that such claims were subject to a recognized common law immunity. This immunity protected public officials from liability for injuries caused when, acting within the scope of their duties, they instituted an administrative proceeding against a person wrongfully and without probable cause.[8] (*Hardy,* at pp. 582–584.) As the court stated, the school defendants "occupied positions which would ordinarily embrace duties relating to the investigation of charges which could lead to the discipline or dismissal of persons such as plaintiff, and it is not claimed that the school defendants were without authority to investigate and prosecute charges made against employees." (*Id.* at p. 583.)

In *Kemmerer,* a county employee was accused of using his position and access to confidential information to harass a county resident who owed him money. (*Kemmerer, supra,* 200 Cal.App.3d at p. 1430.) After an investigation and administrative proceeding, the employee was terminated. (*Id.* at p. 1431.) He was later reinstated by the county civil service commission. (*Ibid.*) He thereafter asserted various tort and contract claims against the employees involved in his termination. (*Id.* at pp. 1431–1432.) As to the tort claims, the Court of Appeal held that "[t]he investigation, the preliminary notice and the proceedings before the civil service commission come within the scope of an 'administrative proceeding' as that term is used in Government Code section 821.6. It follows that pursuant to section 821.6, [the defendants] are immune from tort liability for any acts done to institute and prosecute the disciplinary proceeding." (*Id.* at p. 1437.)

■ In our view, Ross's tort claims also fall "under the general rubric of malicious prosecution" (*Shoemaker, supra,* 2 Cal.App.4th at p. 1423), as discussed in *Hardy, Kemmerer,* and *Shoemaker.* The gravamen of these claims is that, acting out of discriminatory and retaliatory motives, BART employees initiated and prosecuted administrative proceedings to discipline or discharge Ross based on accusations they knew to be false. Such acts by employees are immune from liability under section 821.6, and therefore BART is immune from liability under section 815.2.

---

[8] As noted in *Shoemaker, supra,* 2 Cal.App.4th at page 1422, footnote 4, section 821.6 was enacted in 1963 as a codification of this common law immunity.

■ Ross seeks to distinguish *Hardy*, *Kemmerer*, and *Shoemaker* on the ground that all three cases were predicated on the liability of employees acting within the scope of their employment under section 815.2, subdivision (a). Ross contends that section 815.2 is inapplicable to FEHA-based *Tameny* causes of action for discrimination alleged against public employers because the case law has held that only the employer may be sued under that theory, not employees. (See, e.g., *Reno v. Baird* (1998) 18 Cal.4th 640, 663–664 [76 Cal.Rptr.2d 499, 957 P.2d 1333] [since individual supervisor could not be sued for discrimination under FEHA, she also could not be sued individually for wrongful discharge in violation of public policy].) This argument fails for two reasons. First, the two tort causes of action in issue each involve claims of retaliation as well as age and disability discrimination. In contrast to discrimination claims, retaliation claims under FEHA may be asserted against individual employees. (See § 12940, subd. (h); *Taylor v. City of Los Angeles Dept. of Water & Power* (2006) 144 Cal.App.4th 1216, 1237 [51 Cal.Rptr.3d 206].) Thus, the premise of Ross's argument, that the first and fourth causes of action expose BART to no potential for derivative liability, is false. Second, these causes of action allege nonstatutory, common law torts for which BART's liability, if any, can *only* arise vicariously. (§ 815, subd. (a); *Eastburn v. Regional Fire Protection Authority* (2003) 31 Cal.4th 1175, 1185 [7 Cal.Rptr.3d 552, 80 P.3d 656] [public entity tort liability requires a statutory basis].) Unless BART is vicariously liable for the common law tort of wrongful discharge or discrimination in violation of public policy under section 815.2, it has no liability at all by virtue of section 815.[9]

Summary adjudication was properly granted on Ross's first and fourth causes of action for wrongful termination in violation of public policy.

B., C.[*]

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

[9] Relying exclusively on *City of Moorpark*, *supra*, 18 Cal.4th 1143, a federal district court recently held in *Scott v. Solano County Health & Social Services Dept.* (E.D.Cal. 2006) 459 F.Supp.2d 959 that a common law wrongful discharge claim against a public agency was not barred by section 815, subdivision (a) or any other statutory immunity. However, since *City of Moorpark* did not in fact consider or decide the issue of public entity immunity, and *Scott* offers no independent analysis of the relevant governmental immunity statutes, we do not find the *Scott* opinion persuasive on this point.

[*] See footnote, *ante*, page 1507.

## III. DISPOSITION

The judgment in favor of BART is affirmed.

Stein, Acting P. J., and Swager, J., concurred.

A petition for a rehearing was denied February 20, 2007, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied April 18, 2007, S150717. George, C. J., did not participate therein. Kennard, J., and Moreno, J., were of the opinion that the petition should be granted.