Filed 11/26/24; Certified for Partial Publication 12/23/24 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LORI ANN WILEY,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>KERN HIGH SCHOOL DISTRICT et al.,<br><br>    Defendants and Respondents. | F086953<br><br>(Super. Ct. No. BCV-22-101350)<br><br>**OPINION** |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kern County.  Bernard C. Barmann, Judge.

Law Offices of David Shaker and David Shaker; Law Offices of Robert L. Bastian, Jr., and Robert L. Bastian, Jr., for Plaintiff and Appellant.

Carpenter Rothans & Dumont, Louis R. Dumont, and Katrina Joy Valencia; Pollak, Vida & Barer, Daniel P. Barer and Karen M. Stepanyan for Defendants and Respondents.

-ooOoo-

Plaintiffs Lori Ann Wiley (Wiley) and Charles Wallace Hanson (Hanson), who is not a party to this appeal (sometimes collectively referred to as plaintiffs), allegedly engaged in a verbal altercation at a Kern High School District (KHSD) high school with

various students, staff, and a member of school law enforcement, Michael Whiting, after a high school employee blocked a handicap parking spot Wiley and Hanson intended to use. Wiley submitted a written complaint about the incident to the school. Whiting later submitted a report recommending various misdemeanor charges related to the verbal altercation. Wiley was later cited, and a prosecutor filed a criminal complaint against her with three misdemeanor charges related to the verbal altercation. After a mistrial, the court dismissed Wiley's charges in furtherance of justice.

Wiley sued, as relevant here, defendants and respondents Edward Komin, Michael Whiting, Luis Peña, and Steven Alvidrez, all KHSD police officers, for violating her First Amendment rights to be free of retaliation and malicious prosecution for her exercise of free speech and abuse of process. She brought, in relevant part, causes of action under 42 U.S.C. section 1983, the Bane Act (Civ. Code, § 52.1), and common law torts for intentional infliction of emotional distress and negligence.

The trial court sustained respondents' demurrer to Wiley's causes of action in the second amended complaint on a multitude of grounds without leave to amend.[1] The court also granted a motion to strike Wiley's punitive damages allegations without leave to amend. On appeal, Wiley contends the court erred in its ruling, that she pled facts sufficient to state her causes of action, and her causes of action are not barred by federal qualified immunity and state statutory immunity.

We affirm in part and reverse in part.

## BACKGROUND

Wiley and Hanson filed their initial complaint on June 1, 2022, and a first amended complaint on July 5, 2022. On November 8, 2022, plaintiffs filed a request for dismissal with prejudice as to KHSD, which was granted. The record also contains a

---

[1] The trial court also sustained the demurrer in part with and without leave to amend as to the causes of action brought by Hanson that are not part of this appeal.

certificate of service showing a request for dismissal with prejudice as to Edward Komin in his official capacity. Later, this was confirmed in the "Joint Stipulation" recitals and order filed on November 9, 2022. In that order, the trial court ordered plaintiffs to file a second amended complaint based on the parties' stipulation. On December 15, 2022, plaintiffs filed their second amended complaint (SAC).

**Factual Allegations**

We summarize the SAC's pertinent allegations as follows:[2]

On June 2, 2021, Wiley and Hanson arrived in a vehicle at a KHSD high school campus to pick up yearbooks for Wiley's children. A school employee stopped her vehicle, blocking the designated handicap parking space that the driver of the vehicle intended to use. "This caused consternation and ultimately a verbal argument which escalated as other [KHSD] employees became involved, including [KHSD] Police Officer Michael Whiting and [KHSD] Campus Supervisor Sabrina Fowler. [¶] … Ultimately, a campus employee provided Wiley with the two yearbooks. Both Wiley and Hanson left … in their car."

The next day, Wiley e-mailed a complaint about the incident to the school. On June 8, 2021, based on Wiley's complaint, KHSD Police Chief Edward Komin initiated an investigation into district police officer Michael Whiting. The results of the investigation into Whiting's conduct were pending at the time of the SAC's filing.

On June 15, 2021, a school district compliance officer issued a summary of the investigation into Wiley's complaint. The summarizing officer explained that at least one district employee engaged in rude conduct and was subject to corrective personnel action. The officer found that employee made a "highly inappropriate statement" to Wiley,

---

[2] Because the demurrer addressed causes of action related to both plaintiffs Wiley and Hanson, but only Wiley appeals here, we recite only those factual allegations related to Wiley's claims.

stating, "You are a horrible woman," though Wiley contends the employee said, "You are a horrible mother."

On June 24, 2021, Whiting issued an incident report recommending charges against Wiley for disturbing a public school or meeting (Ed. Code, § 32210), annoying a child under 18 years of age (Pen. Code, § 647.6, subd. (a)(1)), challenging or fighting in public (Pen. Code, § 415, subd. (1)), using offensive words in public (Pen. Code, § 415, subd. (3)), and violating civil rights (Pen. Code, § 422.6). Wiley claims Whiting's report contained "no evidence which could be reasonably construed as constituting probable cause that either Wiley or Hanson committed any crime [and] cast both of them in an extremely unfavorable light."

Whiting also prepared two probable cause declarations; one declaration accusing Hanson of four misdemeanor offenses and the second declaration accusing Hanson of felony vandalism but prepared none as to Wiley.

KHSD Police Chief Edward Komin reviewed Whiting's report and "approved both the investigation and subsequent arrests." However, an arrest warrant issued against Hanson only, and he was subsequently arrested at Wiley's home on July 15, 2021. KHSD police officers Luis Peña and Steven Alvidrez conducted Hanson's arrest. Wiley was not arrested; she signed a citation issued against her delivered, presumably, by Peña and Alvidrez.[3]

On July 9, 2021, a criminal complaint issued against Wiley, charging her with three misdemeanors: (1) disturbing the peace (Pen. Code, § 415); (2) disturbing any public school or meeting (Ed. Code, § 32210); and (3) disrupting school activities (Ed. Code, § 44811).

---

[3]    Wiley does not allege that either Peña or Alvidrez engaged in any other conduct related to her. She does not allege that they participated in any investigation into or contributed any evidence toward the charges brought against her.

A subsequent public records request to the high school uncovered an April 29, 2021 e-mail from an employee. Wiley did not allege that this employee participated in the June 2, 2021 verbal altercation at the school. The e-mail discussed Wiley's request to "properly place her children," and concluded: "So good luck with this situation… Erika, you must be soooo happy to be able to walk away from this, although complaints go to HR! So you may get to talk to Lori on a daily basis. LOL! [¶] Let's get this crap done and in place, people! I don't want to have to lie to her on the phone anymore."

At some point during the criminal proceedings, "Wiley asked the prosecutor responsible for prosecuting both matters why he was not dropping the factually and legally meritless charges, [and] that prosecutor replied with words to the effect that Wiley and Hanson had angered the [KHSD] employees involved by threatening a civil lawsuit against them."

On January 3, 2022, after a mistrial, "the court dismissed all three charges in the furtherance of justice."

**Motion to Strike**

On January 17, 2023, defendants Komin, Whiting, Peña, and Alvidrez filed a motion to strike portions of the SAC. Specifically, defendants requested the court to strike the SAC's allegations regarding (1) punitive damages against Komin, Whiting, Peña, and Alvidrez for failure to plead sufficient facts; (2) KHSD or its employees, other than Komin, Whiting, Peña, and Alvidrez, because KHSD was dismissed with prejudice from the action; and (3) various portions of the SAC based on defendants' immunity to various causes of action under Government Code section 821.[4] Wiley filed an opposition to the motion to strike.

---

[4] Government Code section 821 provides that "[a] public employee is not liable for an injury caused by his adoption of or failure to adopt an enactment or by his failure to enforce an enactment."

**Demurrer**

On January 17, 2023, defendants Komin, Whiting, Peña, and Alvidrez filed a demurrer to the SAC. Defendants argued that: (1) plaintiffs failed to state facts sufficient to constitute a cause of action pursuant to Government Code section 815, subdivision (a), requiring claims against public entities and their employees to be based on statute; (2) plaintiffs failed to allege their causes of action with specificity (Code Civ. Proc., § 430.10, subds. (e)–(f)); (3) plaintiffs failed to state a claim for negligence under Government Code sections 814, 815, subdivision (a), 820, and 1714; (4) defendants are immune from plaintiffs' Bane Act (Civ. Code, § 52.1) (Bane Act) and intentional infliction of emotional distress claims under Government Code sections 821.6 and 815.2; and (5) defendants are entitled to qualified immunity for the causes of action based on 42 U.S.C. section 1983.

Wiley submitted an opposition to the demurrer. Though she stated she should be "granted leave to amend where indicated," she did not allege any new facts or new legal theories to cure any deficiencies in the SAC.

**The Trial Court's Ruling**

On May 5, 2023, the trial court issued a mixed ruling on the demurrer, sustaining some causes of action as to some defendants with or without leave to amend, and overruling other causes of action as to some defendants.[5] We note that, on appeal, Wiley only addresses those aspects of the court's ruling pertaining to Whiting and Komin that were sustained *without* leave amend as to the SAC's first, sixth, tenth, eleventh, and twelfth causes of action.[6]

---

[5]     Due to the trial court's complicated, multifaceted ruling, we refrain from an exhaustive summary here. Given our *de novo* review, we include below only those facets of the court's ruling relevant to our analysis.

[6]     Insofar as Wiley intends her appeal to address the other named defendants, Alvidrez and Peña, Wiley either (1) fails to address why the court erred in sustaining the demurrer as to these defendants without leave to amend, forfeiting these arguments on

In the same ruling, the trial court granted, in part, both with and without leave to amend as to specific portions of the SAC, and denied, in part, the motion to strike. The court determined that, as to Whiting, plaintiffs did not address defendants' arguments, conceding the motion as to Whiting. The court granted the motion as to Komin with leave to amend. Finally, the court granted, without leave to amend, and denied, separate requests to strike parts of the SAC.

On September 20, 2023, upon ex parte application by Wiley for a judgment of dismissal as to Wiley only, without objections by defendants, the trial court issued a judgment of dismissal as to all causes of action brought by Wiley against KHSD, Komin, Whiting, Peña, and Alvidrez.

On October 4, 2023, Wiley filed her notice of appeal.

## DISCUSSION

### I.     Standard of Review

We review an order sustaining a demurrer without leave to amend de novo, examining the pleaded facts to see whether they are sufficient to state any cause of action under any legal theory. (*Summerfield v. City of Inglewood* (2023) 96 Cal.App.5th 983, 992.) Though we assume the truth of all properly pleaded facts, " '[w]e do not assume the truth of contentions, deductions, or conclusions of fact or law….' " (*Ibid.*)

---

appeal (*In re Marriage of Falcone & Fyke* (2008) 164 Cal.App.4th 814, 830 [absence of cogent legal argument or citation to authority forfeits the contention]), or (2) is precluded from appealing those causes of action sustained as to these defendants with leave to amend (*Roger v. County of Riverside* (2020) 44 Cal.App.5th 510, 532 [" '[o]rders sustaining demurrers are not appealable' "]).

Given the space required to parse each ruling, after our exhaustive review, we believe this general pronouncement sufficient and proceed, as the parties do as well, only as to those causes of action sustained without leave to amend as to Whiting and Komin.

7.

## II.     42 U.S.C. Section 1983

Wiley's first cause of action alleges that Whiting, Peña, and Alvidrez violated, under 42 U.S.C. section 1983 ("section 1983"), her First, Fourth, and Fourteenth Amendments of the United States Constitution.  She alleges they did this via (1) false arrest; (2) use of unreasonable force; (3) malicious prosecution; (4) abuse of process; and (5) retaliation.[7]

### A.     *Abuse of Process*

We agree with respondents that Wiley fails to sufficiently allege a claim for abuse of process.

A section 1983 claim for abuse of process looks to state law for its elements.  (*Cox v. Mariposa County* (E.D. Cal. Sept. 30, 2022) 2022 WL 4664129, at p. *9.)  Under California law, abuse of process is not the appropriate vehicle to attack the initiation of a police investigation.  While a claim for malicious prosecution challenges the wrongful *initiation* of a lawsuit, the tort of abuse of process is founded upon "subsidiary activity *within* the lawsuit."  (*Adams v. Superior Court* (1992) 2 Cal.App.4th 521, 528, italics added.)

Abuse of process "concerns the misuse of the *tools* the law affords litigants once they are in a lawsuit (regardless of whether there was probable cause to commence that lawsuit in the first place)."  (*Bidna v. Rosen* (1993) 19 Cal.App.4th 27, 40.)  Wiley cites no case law otherwise, and, to the contrary, the tort does *not* address " ' "the wrongful initiation of criminal or civil proceedings…." ' "  (*Spellens v. Spellens* (1957) 49 Cal.2d

---

[7]     Given Wiley does not address Peña and Alvidrez, and the allegations pertinent to her involve no conduct by Peña or Alvidrez, we conclude the trial court properly sustained the demurrer to this cause of action without leave to amend as to Peña and Alvidrez.  Further, Wiley only addresses her rights under the First Amendment and never alleges she was arrested or subjected to unreasonable force in violation of her Fourth or Fourteenth Amendment rights.  We thus do not consider, and Wiley never raises, her false arrest or unreasonable force claims.

210, 231; *Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157, 1169 ["the mere filing or maintenance of a lawsuit—even for an improper purpose—is not a proper basis for an abuse of process action"].)

Here, Wiley alleges no such abuse *during* her pending criminal proceedings, only that Whiting wrongfully initiated a criminal investigation and further proceedings against her. This is not alleged abuse of process but malicious prosecution.

The trial court properly sustained respondents' demurrer to Wiley's abuse of process claims under her section 1983 cause of action, as well as her sixth cause of action under the Bane Act based on abuse of process.[8]

### B. *Malicious/Retaliatory Prosecution*

We agree with respondents that (1) Wiley fails to state a claim for malicious/ retaliatory prosecution, and (2) Whiting is protected from liability under the doctrine of qualified immunity.

#### 1. **Legal Standards**

To state a claim under section 1983, plaintiff must allege (1) the conduct complained of was committed by a person acting under color of state law, and (2) that the conduct deprived plaintiff of rights, privileges or immunities secured by the Constitution or laws of the United States. (*Jensen v. City of Oxnard* (9th Cir. 1998) 145 F.3d 1078, 1082.)

The elements of a section 1983 claim for malicious/retaliatory prosecution are defined by state law. (See *Rezek v. City of Tustin* (9th Cir. 2017) 684 Fed. Appx. 620, 621 ["the elements of Rezek's malicious prosecution claims are controlled by California state law"]; *Awabdy v. City of Adelanto* (9th Cir. 2004) 368 F.3d 1062, 1066 ["we have

---

[8]　　We address the remainder of Wiley's Bane Act claim based on malicious prosecution below.

incorporated the relevant elements of the common law tort of malicious prosecution into our analysis under § 1983"].)

Under California law, the elements of a cause of action for malicious prosecution are: " ' " 'that the prior action (1) was commenced by or at the direction of the defendant and was pursued to a legal termination in [the] plaintiff's [] favor [citations]; (2) was brought without probable cause [citations]; and (3) was initiated with malice [citations.]' " ' " (*Jackson v. Lara* (2024) 100 Cal.App.5th 337, 343.)[9] This tort "is disfavored and has therefore been limited for policy reasons." (*Ibid*.)

A section 1983 claim for malicious prosecution lies "against a government investigator who submits false and material information in a warrant affidavit." (*Harmon v. City of Pocatello* (2021) 854 Fed. Appx. 850, 853.) "To succeed on such a claim, the plaintiff 'must show that the investigator made deliberately false statements or recklessly disregarded the truth in the affidavit and that the falsifications were material to the finding of probable cause.' " (*Id*. at pp. 853–854.)

Though Wiley brings a malicious/retaliatory prosecution claim under section 1983, not a retaliatory *arrest* claim, we must disaggregate the standards for each given unclarity in the briefing.

Under section 1983, in malicious/retaliatory *prosecution* cases, a plaintiff must plead and prove the absence of probable cause for the underlying criminal charge.

---

[9] We observe that no party or the court raised the issue of whether the criminal case against Wiley was terminated in her favor. We note that the SAC only alleges that Wiley's criminal charges were dismissed with prejudice in furtherance of justice. However, this does not mean the termination of charges occurred in her favor: a showing that criminal charges were dismissed in furtherance of justice does not satisfy the favorable termination requirement. (*De La Riva v. Owl Drug Co*. (1967) 253 Cal.App.2d 593, 600.) Such a termination is not definitionally inconsistent with Wiley's guilt; thus, we do not believe that the SAC sufficiently alleges a favorable termination. Nevertheless, because no party raised this issue below and the trial court did not address it, we are precluded from deciding this issue on appeal.

(*Nieves v. Bartlett* (2019) 587 U.S. 391, 399–400 (*Nieves*).) "It is not enough to show that an official acted with a retaliatory motive and that the plaintiff was injured—the motive must *cause* the injury. Specifically, it must be a 'but-for' cause, meaning that the adverse action against the plaintiff would not have been taken absent the retaliatory motive." (*Id.* at pp. 398–399.)

"[The] plaintiffs in retaliatory prosecution cases [must] show more than the subjective animus of an officer and a subsequent injury; [the] plaintiffs must also prove as a threshold matter that the decision to press charges was objectively unreasonable because it was not supported by probable cause." (*Nieves*, *supra*, 587 U.S. at pp. 400–401, citing *Hartman v. Moore* (2006) 547 U.S. 250, 260–261.)

Federal courts apply this standard to retaliatory prosecution cases, including First Amendment violations. (See, e.g., *Grisham v. Valenciano* (5th Cir. 2024) 93 F.4th 903, 909 [applying *Nieves* standard to a 1st Amend. retaliatory criminal prosecution claim]; *Pallas v. Accornero* (N.D. Cal. Aug. 22, 2019) 2019 WL 3975137, at p. *5 [applying *Hartman*/*Nieves* standard to a retaliatory prosecution claim].)

In retaliatory *arrest* cases, the plaintiff must still generally plead and prove the absence of probable cause, but *Nieves* established "a narrow qualification … where officers have probable cause to make arrests, but typically exercise their discretion not to do so." (*Nieves*, *supra*, 587 U.S. at p. 406.) This exception requires "objective evidence that [the plaintiff] was arrested when otherwise similarly situated individuals not engaged in the same sort of protected speech had not been." (*Id.* at p. 407.) Though Wiley claims this exception, it does not apply. She never alleges that she was arrested or even detained, only that she was cited. Thus, Wiley must plead an absence of probable cause to properly plead her malicious/retaliatory prosecution claim.[10]

---

[10] In her reply brief, Wiley embarks on a lengthy, complicated, confusing, and legally unsupported excursion to circumnavigate this exception. She claims that *Gonzalez v. Trevino* (2024) 602 U.S. 653 (*Gonzalez*), which clarified the standard for evidence

Probable cause is determined based on the totality of the circumstances. (See *United States v. Valencia-Amezcua* (9th Cir. 2002) 278 F.3d 901, 906.) It is " 'a reasonable ground for belief of guilt.' " (*Maryland v. Pringle* (2003) 540 U.S. 366, 371.) It requires "only a probability or substantial chance of criminal activity, not an actual showing of a crime." (*People v. Diaz* (2023) 97 Cal.App.5th 1172, 1178.)

" ' "It is not necessary that [the malicious prosecution defendant] shall institute an investigation of the crime itself, or seek to ascertain whether there are any other facts relating to the offense, or try to find out whether the accused has any defense to the charge. He is not required to exhaust all sources of information bearing upon the facts

---

required for the here-inapplicable *Nieves* exception for retaliatory arrests, somehow broadened the *Nieves* exception to apply to retaliatory *prosecution* claims.

This is a borderline frivolous argument. Nothing in *Gonzalez* suggests the court addressed the scope of this exception. Only Justice Alito's solitary concurring opinion suggested the exception should fall beyond "split-second" arrests, but not even he suggested it should go beyond "arrests" to retaliatory prosecutions. (*Gonzalez*, *supra*, 602 U.S. at pp. 668–669, 673 (concur. opn. of Alito, J.) ["*Nieves* applies to *all* retaliatory-arrest claims brought under § 1983"].) We refuse to interpret Supreme Court precedent, as Wiley claims we should, "based more on what the *Gonzalez* opinion and concurrences didn't say, than what they did."

Further, Wiley's argument that *Gonzalez* somehow leads to the conclusion that a Ninth Circuit decision, *Ford v. City of Yakima* (9th Cir. 2013) 706 F.3d 1188 (*Ford*), abrogated in part by *Nieves*, *supra*, 587 U.S. at p. 397, is good law is similarly bereft of support. Though *Ford* held a plaintiff need not plead an absence of probable cause for retaliation, the *Ford* plaintiff brought a claim based on officers' decision to detain him for his speech while in custody for a noise violation, rather than issuing a citation. (*Ford*, at p. 1197 (dis. opn. of Callahan, J.).) Thus, *Ford* is not only factually distinguishable from this case, but the Ninth Circuit concluded that "*Nieves* abrogated *Ford* … to the extent those cases held that a plaintiff can prevail on a First Amendment retaliatory arrest claim regardless of whether probable cause existed for the arrest." (*Ballentine v. Tucker* (2022) 28 F.4th 54, 65, fn. 1.)

All these cases discuss retaliatory arrest or detainment by officers, none of which Wiley alleges. She only alleges retaliatory prosecution. *Nieves* clearly defines the absence of probable cause as a necessary element of pleading a retaliatory *prosecution* claim. (*Nieves*, *supra*, 587 U.S. at pp. 400–401.) We see no reason to depart from the high court's clear standard.

12.

which have come to his knowledge." …. "The facts within his knowledge may not in point of law constitute a crime; but, if they are of such character as to induce in the mind of a reasonable man the honest belief that a crime has been committed, he is justified in seeking to have the crime punished." ' " (*Jackson v. Lara*, *supra*, 100 Cal.App.5th at pp. 344–345.)

Further, a rebuttable presumption exists when "a prosecutor exercises independent judgment regarding the existence of probable cause in filing a complaint. The presumption can be overcome, for example, by evidence that the officers knowingly submitted false information or pressured the prosecutor to act contrary to her independent judgment. [Citation.] Unless overcome, however, the presumption insulates the arresting officers from liability for harm suffered after the prosecutor initiated formal prosecution." (*Smiddy v. Varney* (9th Cir. 1986) 803 F.2d 1469, 1471.) The presumption of the prosecutor's independent judgment may be rebutted by evidence that investigating officers omitted material information in reports provided to the prosecutor. (*Borunda v. Richmond* (9th Cir. 1988) 885 F.2d 1384, 1390.)

Finally, government employees are subject to qualified immunity under section 1983 unless (1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was clearly established at the time. (*District of Columbia v. Wesby* (2018) 583 U.S. 48, 62–63; *Casey N. v. County of Orange* (2022) 86 Cal.App.5th 1158, 1177.)

### 2.    <u>Analysis</u>

We agree with respondents and the trial court that Wiley's section 1983 claim is deficient for multiple reasons.

First, Wiley fails to adequately allege a violable First Amendment right. She alleges only that, after a school employee blocked a designated handicap parking space with a vehicle, Wiley had a "verbal argument which escalated as other [KHSD] employees became involved, including … Whiting." "[O]ther employees and students

13.

unnecessarily and unreasonably escalated the intensity of what remained a verbal dispute." But Wiley never alleges what she said nor to whom she spoke: either school employees, minor students, or Whiting, a police officer, who were all present.

But whether the First Amendment protected Wiley's speech depends on its content. (See *Garcetti v. Ceballos* (2006) 547 U.S. 410, 416 [the 1st Amend. protects speech made " 'as a citizen upon matters of public concern' "].) The protections available also depend upon the recipient's status. (See, e.g., *City of Houston Hill* (1987) 482 U.S. 451, 461 ["the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers"]; *Bethel School Dist. No. 403 v. Fraser* (1986) 478 U.S. 675, 684–685 [1st Amend. curtails otherwise protected explicit or vulgar speech as to minors].) Knowing neither the content nor audience of her speech, Wiley fails to adequately allege that she engaged in a constitutionally protected activity during the June 2, 2021 verbal altercation.

Given we do not know the content or audience of Wiley's speech, we cannot determine the existence or nonexistence of probable cause. The trial court determined there was probable cause to charge Wiley with at least some crime. But this was wrong. There are insufficient facts to determine whether Wiley's conduct passed such a threshold, or that Whiting (or any other officer) was informed of facts sufficient to constitute probable cause. However, Wiley scores only a pyrrhic victory. Though we agree with Wiley that the trial court could not determine the *existence* of probable cause, Wiley cannot carry her burden to adequately plead its *nonexistence*. (*Nieves*, *supra*, 587 U.S. at p. 400.)

She alleges nothing about the content of Whiting's report other than (1) it lacked probable cause (a legal conclusion we must disregard (*WA Southwest 2, LLC v. First American Title Ins. Co.* (2015) 240 Cal.App.4th 148, 151)) and (2) that Whiting "cast [her] in an extremely unfavorable light." The latter statement is insufficient. An unfavorable characterization is not synonymous with a lack of probable cause, especially

14.

given Wiley fails to explain in her pleading what that characterization amounted to. Failing to allege the factual findings in the report, we can neither determine if probable cause existed or, fatal to Wiley's case, it *did not exist*, which she had to plausibly plead but did not.

Second, Wiley fails to adequately plead that Whiting's alleged misconduct was the "but-for" cause of the prosecution's decision to initiate criminal proceedings against her. She never alleges that Whiting knowingly or recklessly submitted false, material information, omitted material information, or otherwise improperly influenced, directly or indirectly, the prosecution's decision to charge her. Nor has she pled that Whiting's unfavorable characterization was the "but-for" cause of her injury: "[T]hat the adverse action against [her] would not have been taken absent the retaliatory motive." (*Nieves, supra*, 587 U.S. at p. 399.)

Abstracting from the dearth of facts about the content of the investigative report, Wiley does not even allege that Whiting's investigative report catalyzed the prosecution's criminal complaint. She does not allege that Whiting's report was submitted to the prosecutor, nor that Whiting prepared any probable cause declarations as to her. In sum, she does not plead any facts demonstrating that Whiting's report, probable cause or not, was the basis for the prosecutor's decision to charge her. Even if we assume it was, she does not allege that the sole, well-pled defect in the report—Whiting's unfavorable characterization of her—influenced the prosecutor to charge her.

Third, Wiley does not adequately allege a retaliatory animus for the prosecution. Her reference to a statement by an unnamed prosecutor—that the charges against her were not dropped because she angered certain KHSD employees by threatening a civil lawsuit against them—is insufficient. Wiley never alleges if she threatened a lawsuit and against whom, much less Whiting. Speculation only could conclude that the prosecutor referred to *Whiting*, as opposed to other witnesses animated by anger to testify against her. Nor does the prosecutor's statement indicate any impropriety in Whiting's

15.

investigation, even if it evidenced his improper motive, which, alone, is insufficient to establish malicious/retaliatory prosecution. (*Nieves*, *supra*, 587 U.S. at pp. 400–401.)

Wiley urges us to infer a retaliatory motive based on the timing of her complaint to the school, Whiting's subsequent incident report, and the criminal complaint brought against her, but this would not be a *reasonable* inference under the circumstances, only speculation, without other facts, such as an adequately alleged absence of probable cause. (*Cole v. Patricia A. Meyer & Associates, APC* (2012) 206 Cal.App.4th 1095, 1114 [malice may be inferred from lack of probable cause but must be "supplemented with proof that the prior case was instituted largely for an improper purpose"].)

Though we could imagine a case where a school police officer, such as Whiting, issues a report recommending charges after a parent, such as Wiley, complains to the school, and that officer is then subjected to an investigation, we cannot simply assume that was the case here. Even if we knew the contents of Wiley's complaint, which, though undisclosed, at least appears to likely be protected speech, Wiley has not alleged that Whiting issued the investigative report *because* Wiley e-mailed her complaint to the school. But even if she did, again, Whiting's retaliatory motive is insufficient alone, without an absence of probable cause, to establish Wiley's malicious/retaliatory prosecution claim. (*Nieves*, *supra*, 587 U.S. at pp. 400–401.)

Put differently, Wiley has not adequately alleged, beyond a conjectural factual conclusion, that the criminal proceeding was brought against her for an improper purpose. Nor has she alleged any facts to support an inference that, absent her complaint to the school, Whiting would not have recommended charges.

To demonstrate malice and a lack of probable cause, Wiley attempts to demonstrate deficiencies in the five recommended charges in Whiting's report. But the existence of probable cause depends on "only a probability or substantial chance of criminal activity, *not an actual showing of a crime.*" (*People v. Diaz* (2023) 97 Cal.App.5th 1172, 1178, italics added.) As discussed, we cannot attempt to determine

probable cause's existence or nonexistence for any crime based on her speech because Wiley fails to allege what she said. We cannot even begin to analyze the sufficiency of the recommended charges without adequate facts. Even if Wiley could show that those charges were not supported by probable cause, all Whiting had to show was a substantial chance that a crime occurred, even if no crime occurred. Yet, we cannot analyze whether Whiting's incident report failed to meet this bar given that we do not know its contents.

Fourth, Wiley fails to plead sufficient facts to support a claim that the school's "police officers and staff … along with witnesses listed in the resulting police reports, conspired" to create and initiate "false criminal charges" against Wiley.[11] To establish a conspiracy to violate Wiley's rights, she must plead: "(1) [the] formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct." (*Spencer v. Mowat* (2020) 46 Cal.App.5th 1024, 1037.)

But Wiley does not allege how the criminal charges were "false." She does not explain who the witnesses in the police reports are, how they promoted false evidence, or, critically, that Whiting, Komin, or any of the other police officers knew of the false evidence and willfully submitted it to a prosecutor in furtherance of the alleged conspiracy.

Wiley alleges that a school employee lied to a non-party investigating officer, stating she called Wiley a "horrible woman" during the June 2, 2021 altercation, when in fact she called her a "horrible mother." But this is not falsification of material evidence. Wiley alleges a school employee (unalleged to be a witness) admitted to lying to Wiley, presumably about Wiley's children's "placement," in an April 29, 2021 e-mail, and wrote to another employee (unalleged to be a witness) that she must be "happy to be able to

---

**11**      Notably, only Whiting, Peña, and Alvidrez, not Komin, are named defendants under this cause of action.

walk away from this." But Wiley does not explain how an e-mail predating the June 2, 2021 altercation by more than a month is relevant to, or shows in any manner, a conspiracy to promote false charges against her.

As to the police officers, Wiley only alleges that Whiting prepared an incident report casting her in an unfavorable light and recommending charges, Komin approved it, and a prosecutor filed a criminal complaint. Wiley does not plead facts connecting Whiting or Komin to any common plan to retaliate against her, outside a speculative, conclusory factual allegation. Nor does she plead, as shown above, that Whiting or Komin engaged in any wrongful conduct, for she has not pled specific facts that the incident report lacked probable cause, that any officers submitted false evidence, omitted exculpatory evidence, or otherwise attempted to wrongfully skew their investigation to secure erroneous criminal charges against Wiley.

Finally, Wiley's claim fails because Whiting (and any other officer still implicated) is entitled to qualified immunity. Wiley needed to adequately plead that Whiting violated her constitutional rights to defeat Whiting's qualified immunity. (*District of Columbia v. Wesby*, *supra*, 583 U.S. at pp. 62–63.) But, as discussed, Wiley failed to allege (1) a violable constitutional right, and (2) conduct by Whiting in violation of that right.

On this point, her analogy to *Macias v. Filippini* (ED Cal. May 17, 2018) 2018 WL 2264243 (*Macias*) is unpersuasive. That case involved the imposition of an "indefinite ban" from a public-school campus due to a parent's " 'speech regarding [the] Defendants' treatment of her son, including during school meetings." (*Id*. at p. *4.) In holding that the "indefinite ban" was not a "reasonable restriction on speech," the *Macias* court knew the content of the plaintiff's speech, and the plaintiff alleged that the indefinite ban (a prior restraint on speech subject to strict First Amendment standards) was caused by retaliation for her protected speech. (*Id*. at pp. *4–6.) But we lack sufficient allegations about the contents of Wiley's speech or that any conduct by Whiting

18.

(or any other officer) motivated by retaliation against Wiley caused the criminal proceedings against her.

The court properly sustained defendants' demurrer to Wiley's section 1983 claim and abuse of process claims under section 1983 and the Bane Act.

## III.    The Bane Act

Wiley claims the trial court erred in dismissing her sixth cause of action against Whiting for malicious prosecution and abuse of process[12] in violation of her California and federal constitutional rights under the Bane Act.[13]  We disagree.

The Bane Act provides for liability for the interference or attempted interference with a person's state or federal constitutional rights "by threat, intimidation, or coercion." (Civ. Code, § 52.1, subd. (b).)  To plead a cause of action under the Bane Act, the plaintiff must show "(1) intentional interference or attempted interference with a state or federal

---

[12]    We disposed of Wiley's abuse of process claim under the Bane Act earlier. Further, it appears that Wiley's opening brief misnumbered her causes of action in her discussion.  Though she discusses her "Twelfth Cause of Action" for negligence, the SAC's twelfth cause of action was for a violation of the Bane Act and Unruh Act for "[r]etaliation/false arrest/excessive force."  To the extent Wiley appeals the order sustaining the demurrer to this cause of action, we affirm the order as to the false arrest and excessive force grounds.  As discussed, Wiley never alleges that she was subjected to any arrest or force.  As to the "retaliation" ground, this appears to be a restatement of Wiley's claim under her sixth cause of action.  Because we affirm the order sustaining the demurrer as to that cause of action, we affirm the order as to the twelfth cause of action as well.

[13]    Although Wiley also states this claim under the Unruh Act (Civ. Code, §§ 51, 52), she does not address her cause of action under the Unruh Act, only under the Bane Act, on appeal, forfeiting this issue.  (*Dameron Hospital Assn. v. AAA Northern California, Nevada & Utah Ins. Exchange* (*Dameron Hospital*) (2022) 77 Cal.App.5th 971, 982.) Nor do we see how an Unruh Act claim would succeed in this case.  Essential to such a claim, Wiley must, but does not, allege that she was subject to discrimination based on her identity under a protected class (see Civ. Code, § 51; CACI No. 3060), and that Whiting was employed by a business establishment (*Liapes v. Facebook, Inc.* (2023) 95 Cal.App.5th 910, 922), which is impossible given a public school is not a business establishment (*Brennon B. v. Superior Court* (2022) 13 Cal.5th 662, 684).

constitutional or legal right, and (2) the interference or attempted interference was by threats, intimidation or coercion." (*Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 67.)

First, as discussed, Wiley fails to adequately allege a violable First Amendment right because she fails to specifically allege the content and audience of her speech. Nor does she explain the content of her complaint to the school, or whether Whiting, or any other officer, retaliated against her based on her complaint. Her Bane Act claim is not cognizable as a violation of a federal right.

Similarly, she fails to allege that her speech was protected under the California Constitution. Though California's free speech protections are generally broader than those provided by the First Amendment (Cal. Const., art. I, § 2; *Los Angeles Alliance for Survival v. City of Los Angeles* (2000) 22 Cal.4th 352, 366), those protections do not extend to "every form of speech or expressive activity," including "obscenity, fighting words, defamation, and speech intended, and likely, to incite imminent lawless action." (*Center for Bio-Ethical Reform, Inc. v. The Irvine Co., LLC* (2019) 37 Cal.App.5th 97, 104.) Without any allegations about the content of Wiley's speech or her audience, we cannot determine whether she had speech protections defendants could have violated or attempted to violate.

Second, as discussed, Wiley fails to allege sufficient facts to demonstrate an absence of probable cause: an element required for a malicious prosecution claim. (*Jackson v. Lara*, *supra*, 100 Cal.App.5th at p. 343.) Nor does she allege that Whiting's report recommending charges was motivated by retaliatory animus, as opposed to legitimate law-enforcement reasons. As a result, Wiley fails to plead the required interference, or attempted interference, necessary for a Bane Act claim, which she alleges was carried out by the malicious/retaliatory prosecution.

Third, Wiley fails to plead facts showing "threats, intimidation, or coercion." (Civ. Code, § 52.1, subd. (b).) The "threats, intimidation, or coercion" requirements—the

20.

"egregiousness" element—were intended to prevent the Bane Act from extending to ordinary tort claims. (*Shoyoye v. County of Los Angeles* (2012) 203 Cal.App.4th 947, 956–957.) Wiley presents no authority that a malicious/retaliatory prosecution categorically qualifies as "egregious." In fact, it is a disfavored tort. (*Jackson v. Lara*, *supra*, 100 Cal.App.5th at p. 343.)

Wiley only pleads Whiting compiled an incident report casting her in an "unfavorable light." She does not plead Whiting arrested her (she pleads no arrest at all) without probable cause, submitted false information, omitted material information, knowingly caused erroneous charges to be filed against her, or influenced prosecutors to prosecute her without probable cause. She does not plead that Whiting threatened or intimidated her, either.

Relevant case law counsels us that even the Bane Act violation Wiley thinks she pled—an intentional, malicious, retaliatory conspiracy to subject her to patently false criminal charges because she exercised her right to speak freely at the school and in her subsequent e-mail to the school—does not qualify as "egregious." Take *Cornell v. City and County of San Francisco* (2017) 17 Cal.App.5th 766 (*Cornell*) for example. The *Cornell* court, after considering the facts surrounding the plaintiff's (police officer Cornell's) false arrest, observed that, while he was detained for some length in a burdensome interrogation by his own police department, fellow officers attempted to hunt for, or fabricate, evidence to disparage him. (*Id*. at pp. 794–795.) Upon Cornell's release, "he was cited for a misdemeanor offense." (*Id*. at p. 795.)

"That citation was referred to the internal affairs unit of the San Francisco Police Department, and without further investigation by internal affairs, the citation became the basis of a misconduct charge, resulting in Cornell's firing. Officer Brandt, who gave Cornell the citation, admitted not knowing the factual basis for the Penal Code section 148 charge, and Sergeant Gin, who approved the citation, admitted he had no independent knowledge about why it issued. According to Alice Villagomez, the head of

21.

human resources in the San Francisco Police Department, any experienced officer would have understood the citation would likely result in Cornell's termination. All of this evidence supports an inference not only that Officer Brandt and Sergeant Gin arrested Cornell unlawfully, but that they acted spitefully toward him as well since they knew or should have known the career-ending [misdemeanor] citation they gave him upon his release was baseless." (*Cornell*, *supra*, 17 Cal.App.5th at p. 795.)

The SAC contains no similar allegations. Wiley never alleges that Whiting knew the findings in his report were baseless, submitted false evidence or false charges, or took any specific act out of retaliatory animus toward Wiley. She never alleges that Whiting prepared his incident report because she complained to the school. In fact, Komin apparently took her complaint seriously, instituting an investigation against Whiting.[14] She never alleges a link between Whiting and the prosecutor's comment about certain school employees' anger toward Wiley in response to a question about why the charges had not been dropped. Nor does she allege that Whiting's incident report was the "but-for" or substantial cause of the criminal complaint's issuance against Wiley.

Though we agree with Wiley's argument that, contrary to the trial court's reasoning, Whiting need not have obtained the information for his investigative report by "threats, intimidation, or coercion" to qualify under the Bane Act, we reject Wiley's characterization that "the retaliatory nature of the prosecution, including its unlawful purpose, and the loading of several malicious and factually unsupported charges was, itself, inherently coercive."[15] As discussed, she failed to plead facts sufficient to support

---

[14]    Though Wiley speculates that Komin's investigation must be a sham because he approved the purportedly false charges against her, this is a conclusory allegation, unsupported by specific factual allegations, we must disregard. (*Summerfield v. City of Inglewood*, *supra*, 96 Cal.App.5th at p. 992.)

[15]    Wiley's discussion of a split of authority between *Shoyoye* and *Cornell* on whether coercion must be transactionally independent from the underlying rights violation (*Shoyoye v. County of Los Angeles*, *supra*, 203 Cal.App.4th at pp. 957–959) or may be inherent in the wrongful conduct itself (*Cornell*, *supra*, 17 Cal.App.5th at pp. 801–802)

her characterization on appeal. She never adequately alleges specific facts showing that Whiting's recommendation of charges was motivated by Wiley's speech in the verbal altercation or her complaint to the school.

Fourth, Wiley alleges no facts showing that Whiting's mischaracterization of her rises to the level of coercion required by the Bane Act. "Speech alone is not sufficient to support an action brought pursuant to subdivision (b) or (c), except upon a showing that the speech itself threatens violence against a specific person or group of persons…." (Civ. Code, § 52.1, subd. (k).) Though we do not hold that Whiting's speech needed to threaten violence against Wiley, the Bane Act's language counsels us that a mere unfavorable portrait is likely insufficient. Nevertheless, Wiley does not explain how Whiting's uncharitable caricature of her rose to such a level, for she does not explain what he wrote.

Finally, Wiley's allegation that Whiting's malicious intent "is evidenced, not least, by … the various pointed and unprofessional acts and remarks KHSD employees made against plaintiffs, and for which they were not similarly charged" is insufficient. Wiley fails to allege facts showing that other employees' conduct or remarks may be reasonably attributed to Whiting. Nor does she identify the substance of the conduct or remarks. The SAC's only indication comes from its summary of a June 15, 2021 letter from KHSD police reporting that one employee did not "flip[] [Wiley] off," but rather raised her hand and said, "sorry," and that another employee told Wiley, "You are a horrible woman," or, as Wiley contends, "You are a horrible mother." Wiley does not explain how the latter insult would be subject to criminal prosecution, such that officers chose to investigate Wiley but not the school employee, or why that speaker's malice should be attributed to Whiting.

_____

[specifically dealing with unlawful arrests and wrongful detentions]) is irrelevant for our purposes.

The trial court properly sustained the demurrer as to Wiley's Bane Act cause of action for failure to plead facts sufficient to state a claim.

### A.    *Government Code Section 821.6 Immunity*

Wiley contends that a recent amendment to the Bane Act removing Government Code section 821.6[16] immunity for police officers for Bane Act violations applies to this case.  We disagree.

Previously, California courts rejected the position that "Civil Code section 52.1 prevails over the Government Code section 821.6 immunity."  (*County of Los Angeles v. Superior Court* (2009) 181 Cal.App.4th 218, 230–231; *O'Toole v. Superior Court* (2006) 140 Cal.App.4th 488, 504 ["Civil Code section 52.1 contains no indicia reflecting an intent that public employees may be sued despite a statutory immunity that would otherwise apply"].)

Effective January 1, 2022, the Legislature amended Civil Code section 52.1 to expressly remove Government Code section 821.6 immunity as to "any peace officer or custodial officer" sued for a violation of the Bane Act.  (Sen. Bill No. 2 (2021–2022 Reg. Sess.) ch. 409, § 3.)

Wiley argues this amendment removed Whiting's Government Code section 821.6 immunity for his conduct in 2021 *prior to* the amendment.  We disagree.

Wiley's argument erroneously analogizes to familiar principles in statute of limitations cases.  She argues (1) she could not bring any tort claim against Whiting until after January 3, 2022, when the court dismissed her charges (Gov. Code, § 945.3 [criminal defendant cannot bring civil claims against officers or prosecutors until after the criminal proceeding ends]), and (2) the elements of her cause of action for malicious

---

[16]    Government Code section 821.6 provides that "[a] public employee is not liable for injury caused by his instituting or prosecuting any judicial or administrative proceeding within the scope of his employment, even if he acts maliciously and without probable cause."

prosecution were not completed until January 3, 2022, when she received a "favorable termination" of her case.[17] (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 397 [a cause of action does not accrue until all its elements obtained].)

For her argument to succeed, Wiley must, but fails to, persuade us that application of the Bane Act amendment would be retroactive, not prospective. We presume that statutes are prospective unless the Legislature expressly indicates an intent for retroactive application. (Civ. Code, § 3; *Myers v. Philip Morris Companies, Inc.* (2002) 28 Cal.4th 828, 840–847 (*Myers*).) However, a qualification exists where an amendment is procedural. For example, when a procedural amendment impacts a postamendment trial, even though litigation was pending preamendment, the amendment's application is in fact prospective, not retroactive, because, it relates to the procedure to be followed in the future. (See *Brown v. Friesleben Estate Co.* (1956) 139 Cal.App.2d 1, 4.)

To avoid the presumption of prospectivity, Wiley contends the amendment is *procedural*, not substantive, thus operating prospectively from the date her postamendment cause of action accrued, not retroactively to impact Whiting's preamendment conduct. We disagree.

A statute is not procedural where it creates a new cause of action or " 'deprive[s] a … defendant of *any defense on the merits* or affect vested rights.' " (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 289.) Statutory immunity for public entities or employees is generally a *substantive*, rather than procedural, bar to tort liability. (See *Quigley v. Garden Valley Fire Protection Dist.* (2019) 7 Cal.5th 798, 809 [Gov. Code, § 850.4, providing certain immunity from tort liability, "reads as a substantive bar to tort liability,

---

[17]     As discussed, we question whether Wiley pled a "favorable termination" given a dismissal in the interests of justice is not necessarily favorable. (*De La Riva v. Owl Drug Co.*, supra, 253 Cal.App.2d at pp. 599–600.) Given this issue was not litigated below, and no party addresses it on appeal, we do not decide it here.

much like other privileges or immunities provisions that shield particular actors or activities from otherwise applicable liability for tortious conduct"].)

The removal of an absolute defense to liability is more than a procedural change. For example, *Brown v. Friesleben Estate Co*., *supra*, 139 Cal.App.2d 1, on which Wiley relies, gives us examples of procedural amendments that are procedural and prospective in application. The *Brown* court impliedly determined a procedural change to the amount of a written undertaking required on appeal, and it relied upon other cases regarding the change to the time to file an appeal and a required addition of a bill of exceptions to an appellate record as examples of procedural changes. (*Id*. at pp. 4–5.) Even if, as Wiley argues, Government Code section 821.6 immunity is a "statutory privilege," not a "vested right," it is not merely procedural, and Wiley fails to explain why a "statutory privilege" is procedural, rather than substantive.

Moreover, in an analogous case, our Supreme Court dealt with a repealed statutory "complete immunity" for tobacco companies "in certain product liability lawsuits" between January 1, 1988 and January 1, 1998. (*Myers*, *supra*, 28 Cal.4th at pp. 831–832.) The question in *Myers* concerned whether the amendment repealing that immunity governed " 'a claim that accrued after January 1, 1998, but which is based on conduct that occurred prior to January 1, 1998.' " (*Id*. at p. 832.) The *Myers* court held the immunity under the prior statute applied to all covered conduct "regardless of when the users of the tobacco products may have sustained or discovered injuries as a result of that conduct," i.e., when the users' claims accrued, but did not apply to conduct falling outside of the 10-year immunity period. (*Ibid*.)

*Myers* determined the plaintiff's desired application of that amendment's amelioration of immunity to be retroactive. Our Supreme Court has long held that a retroactive or retrospective law " ' "is one which affects rights, obligations, acts, transactions and conditions which are performed or exist prior to the adoption of the statute." ' " (*Myers*, *supra*, 28 Cal.4th at p. 839; accord, *Landgraf v. USI Film Products*

(1994) 511 U.S. 244, 269 [" ' "[E]very statute, which … attaches a new disability, in respect to transactions or considerations already past, must be deemed retrospective" ' "].)  In other words, "a statute that operates to 'increase a party's liability for past conduct' is retroactive."  (*Myers*, at p. 839.)

Just as in *Myers*, where "no tortious liability attached to a tobacco company's production and distribution of … tobacco products to smokers" in a 10-year period, rendering liability for causes of action accrued postamendment retroactive in application (*Myers*, *supra*, 28 Cal.4th at p. 840), so too did no tortious liability attach under the Bane Act to a police officer, such as Whiting, for instituting a criminal proceeding, even for malicious purposes, prior to January 1, 2022.  Wiley's suggested application of the Bane Act's amendment increases Whiting's " 'liability for past conduct,' " and is thus retroactive in application.  (*Myers*, at p. 840.)

As such, Wiley may only overcome the presumption that this amendment was prospective if she shows (1) an express legislative intent to increase liability for past conduct or (2) extrinsic evidence of a clear legislative intent to increase liability for past conduct.  (*Myers*, *supra*, 28 Cal.4th at pp. 841–847.)  Wiley fails to argue either.  Our review discloses neither.

Civil Code section 52.1's language is not expressly retroactive.  Insofar as subdivision (n) removes immunity as applied to "any cause of action brought against any peace officer," which could be construed as applying to a cause of action arising from past conduct.  The *Myers* court considered similar language in the amendment before them:  that "there exists no statutory bar" to tobacco-related tort claims, those "who have suffered or incurred injuries" are entitled to bring suit, and that "such claims which were or are brought shall be determined on the merits, without the imposition of any claim of statutory bar or categorical defense."  (*Myers*, *supra*, 28 Cal.4th at p. 842, italics omitted.)  The *Myers* court determined that this language was not an "express declaration[]" of the Legislature's intent for retroactive application.  (*Id*. at p. 843.)  At

27.

best, it was ambiguous.  (*Ibid*.)  But " 'a statute that is ambiguous with respect to retroactive application is construed … to be unambiguously prospective.' " (*Id*. at p. 841.)

Our review of the Legislative history discloses no extrinsic evidence of intended retroactive impact.  To our knowledge, no prior draft bill included any retroactive language.  The Legislature only explained that "[t]he bill would eliminate certain immunity provisions for peace officers … sued under the act."  (Legis. Counsel's Dig., Sen. Bill No. 2 (2021-2022 Reg. Sess.) 4 Stats. 2021, Summary Dig., p. 6146.)  This is not a clear expression of retroactive intent because it does not expressly include preenactment conduct.

Finally, *Myers*'s policy considerations counsel our interpretation of the Bane Act's amendment.  " '[T]he "principle that the legal effect of conduct should ordinarily be assessed under the law that existed when the conduct took place has timeless and universal appeal." ' " (*Myers*, *supra*, 28 Cal.4th at pp. 840–841.)  That appeal is evident in cases where retroactive application yields potentially devastating effects.  (*Id*. at pp. 846–847.)  The possibility of punitive or exemplary damages upon a retroactive application " 'demonstrate[s] that [the statute] shares key characteristics of criminal sanctions.  Retroactive imposition of punitive damages would raise a serious constitutional question.' " (*Id*. at p. 846.)

The Bane Act imposes liability for actual damages, treble damages, attorney's fees, and "exemplary damages."  (Civ. Code, §§ 52, subd. (b), 52.1, subd. (c).)  Retroactive application of the Bane Act to remove the immunity to which Whiting (and the other defendants) were entitled to rely upon when their purportedly wrongful conduct occurred raises the constitutional concerns cited above.  Officers previously covered by immunity engaged in a different calculus regarding when to bring charges would then be subject to increased liability in the form of quasi-criminal sanctions they could not have previously anticipated.  We construe statutes to avoid " 'constitutional infirmit[ies].' "

28.

(*Myers*, *supra*, 28 Cal.4th at p. 846.) This principle "reinforces our construction of the [Bane Act] as prospective only." (*Id*. at p. 847.)

We conclude (1) Wiley failed to allege sufficient facts to plead a cause of action under the Bane Act, and (2) Whiting (and the other officer defendants) are immune from liability. The trial court properly sustained defendants' demurrer to Wiley's sixth cause of action, and, to the extent implicated, her twelfth cause of action.

## IV.    Tenth Cause of Action

Wiley argues the trial court erred in sustaining the demurrer as to her cause of action for intentional infliction of emotional distress as to Whiting, and, implicitly, Komin. We disagree.

To adequately plead a claim for intentional infliction of emotional distress, a plaintiff must allege that (1) the defendant's conduct was extreme and outrageous, (2) the defendant intended to cause, or acted with reckless disregard of the probability of causing, the plaintiff emotional distress, (3) the plaintiff suffered severe emotional distress, and (4) the defendant's conduct was a substantial factor in causing the plaintiff's emotional distress. (CACI No. 1600; *Hughes v. Pair* (2009) 46 Cal.4th 1035, 1050–1051.)

To qualify as outrageous, the defendant's conduct must " ' "go beyond all possible bounds of decency, and … be regarded as atrocious, and utterly intolerable in a civilized community." ' " (*Coleman v. Republic Indemnity Ins. Co*. (2005) 132 Cal.App.4th 403, 416.)

The trial court " 'initially determines whether a defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery. Where reasonable men can differ, the jury determines whether the conduct has been extreme and outrageous to result in liability. Otherwise stated, the court determines whether severe emotional distress can be found; the jury determines whether on the evidence it has, in fact, existed.' " (*Plotnik v. Meihaus* (2012) 208 Cal.App.4th 1590, 1614.)

29.

First, respondents demurred to this cause of action on the ground that Komin and Whiting (as well as Peña and Alvidrez) are immune under Government Code section 821.6. This immunity extends to claims that, during an investigation, the public employee "act[ed] out of discriminatory and retaliatory motives." (*Ross v. San Francisco Bay Area Rapid Transit Dist.* (2007) 146 Cal.App.4th 1507, 1516.)

We agree with respondents that the only factual allegations against Whiting and Komin concern conduct in the course of their official duties. Wiley alleges only that Whiting investigated the incident and recommended charges, and that Komin approved the report and recommended charges. Thus, Whiting and Komin are immune from liability.

In response, Wiley urges us to construe current Civil Code section 52.1, subdivision (n)'s language that Government Code section 821.6 "shall not apply *to any cause of action* brought against any peace officer or custodial officer" (italics added) as extending beyond a violation of the Bane Act to *any* cause of action.[18] We need not decide this issue. As discussed, the amendment to Civil Code section 52.1 is not retroactive to Whiting and Komin's conduct in 2021. Therefore, they are immune from liability, and Wiley's cause of action for intentional infliction of emotional distress fails.

Even if we reached the substance of Wiley's allegations as to Komin and Whiting, nothing rises to the level of egregious conduct necessary to plead her claim.

After Komin initiated an investigation into Whiting's conduct, he "reviewed [Whiting]'s investigative report and approved both the investigation and subsequent

---

[18]     We doubt the Legislature intended to enact such a broad-sweeping change, effectively defanging Government Code section 821.6, not in an amendment to that section but an amendment to an entirely different provision of the Civil Code. We also observe that the legislative history reveals a narrower intent that this amendment "eliminate[s] certain immunity provisions for peace officers … *sued under the act.*" (Legis. Counsel's Dig., Sen. Bill No. 2 (2021-2022 Reg. Sess.) 4 Stats. 2021, Summary Dig., p. 6146), italics added.)

30.

arrests…. That the police chief approved charges against plaintiffs that plainly involve plaintiffs' constitutionally protected speech and expressive conduct tends in reason to suggest that the police chief, himself, is implicated in the forming, piece by piece, of a retaliatory wave by [KHSD] police and staff." This is purely speculative. Wiley has pled insufficient facts to support any inference there was a "retaliatory wave." Even if nonofficer school staff made behind-the-back derogatory comments about Wiley, she has not alleged that Komin and Whiting participated, or knew about, the staff's animus toward Wiley, nor that the staff's conduct rose to the level of deliberately submitting false information to Whiting or Komin, which they knowingly submitted to prosecutors in support of false charges.

As to Whiting, as discussed, Wiley fails to plead that Whiting undertook any specious conduct except casting her in an unfavorable light. She does not explain what that means, nor why it had any causal relationship to her injury. Merely disparaging someone, even if inappropriate, is not necessarily egregious, nor can we determine if it was motivated by malice. Finally, Wiley fails to allege any other misconduct Whiting may have perpetrated.

In summary, Komin and Whiting are immune from liability under Government Code section 821.6. Further, Wiley fails to plead sufficient facts that (1) Komin and Whiting engaged in egregious acts; (2) they intended to harm Wiley, or acted with reckless disregard of that outcome; and (3) that either's conduct substantially caused her harm. The trial court properly sustained the demurrer as to Wiley's claim for intentional infliction of emotional distress.

## V.     Eleventh Cause of Action

Wiley contends the trial court erred in sustaining respondents' demurrer as to her eleventh cause of action for negligence against Komin and Whiting.[19] We disagree.

---

[19]     We note the trial court also sustained the demurrer to this cause of action as to Alvidrez and Peña without leave to amend. However, Wiley does not challenge this on

First, we agree with defendants that Whiting and Komin are immunized from liability because their conduct was within the scope of their, as defendants phrase it, "bringing or prosecuting an official proceeding." (See Gov. Code, § 821.6 [immunity for "instituting or prosecuting any judicial or administrative proceeding within the scope of … employment," even if malicious and lacking probable cause].) Though respondents raised this in their demurrer below, and the court sustained the demurrer on this ground, Wiley fails to address it on appeal, forfeiting the issue. (*Dameron Hospital*, *supra*, 77 Cal.App.5th at p. 982.) Wiley's claim fails for this reason alone.

Even reaching the merits, Wiley's allegations fail to adequately plead negligence. To so plead, a plaintiff must show (1) a legal duty requiring due care; (2) a breach of that duty; and (3) the breach proximately or in fact caused the resulting injury. (*Ladd v. County of San Mateo* (1996) 12 Cal.4th 913, 917.)

But Wiley fails to adequately plead that (1) Whiting breached a duty to Wiley; (2) his breach was the proximate or but-for cause of her injury; and (3) Komin breached a duty to Wiley.

First, Wiley alleges that Whiting "conspire[d] with other KHSD employees to interfere with the rights of plaintiffs to be free from unlawful retaliation based on speech." To establish a conspiracy to violate Wiley's rights, she must plead "(1) [the] formation and operation of the conspiracy; (2) wrongful conduct in furtherance of the conspiracy; and (3) damages arising from the wrongful conduct." (*Spencer v. Mowat*, *supra*, 46 Cal.App.5th at p. 1037.) She fails to sufficiently plead facts raising a triable issue that there was such a conspiracy.

Wiley never alleges that Whiting conspired with anyone, only that he prepared a lengthy incident report. She does not allege that he knowingly agreed to utilize another

appeal, forfeiting this issue as to Alvidrez and Peña. (*Dameron Hospital*, *supra*, 77 Cal.App.5th at p. 982.)

employee's false testimony to influence the prosecution to file a criminal complaint against Wiley. In fact, she does not allege that Whiting included any false testimony in the incident report whatsoever nor that he agreed to manipulate the investigation in some fashion to retaliate against Wiley.

Wiley also fails to plead wrongful conduct furthering the conspiracy. Given Wiley only alleges that Whiting prepared the incident report, casting her in an "unfavorable light," we cannot determine whether Whiting's conduct was in fact wrongful, as already discussed. Even if it was wrongful, again, Wiley alleges nothing tying Whiting's conduct to a conspiracy.

Further, disregarding the conspiracy allegation and interpreting Wiley's claim as based on Whiting's direct negligent preparation of the incident report, Wiley does not allege any negligence by Whiting that was the proximate or "but-for" cause of the prosecution's decision to charge Wiley. She does not even allege Whiting's report contained false information, or omitted exculpatory information, that Whiting should have known about and included.

Regarding Komin, Wiley fails to adequately plead any breach of a duty or causal connection to her harm. Though she raises a conclusory allegation that Komin had a duty to hire, train, supervise, and discipline Whiting, she does not allege specific facts to the effect that Komin breached any of these duties. She suggests in her request for leave to amend that Komin, as chief of a "small department," had a duty to intervene in, and stop, Whiting's investigation.

Though Komin, in response to Wiley's complaint to the school, initiated an investigation into Whiting's conduct, she merely speculates this investigation is suspect given Komin approved Whiting's incident report and the recommended charges. But we do not know, nor is there a reasonable inference from Wiley's allegations, that there was anything improper in the incident report. As discussed, we cannot determine the gravity of Whiting's purported uncharitable characterization of Wiley, whether the incident report

33.

lacked probable cause, or whether Whiting engaged in any misconduct, e.g., conspiring with witnesses, knowingly or negligently citing false evidence or omitting exculpatory evidence, that Komin reasonably should have known about and prevented. We cannot determine if Komin's conduct, as alleged, breached any duty, or that any purported breach proximately or in fact caused Wiley's harm.

The trial court correctly sustained the demurrer as to Wiley's eleventh cause of action for negligence.

## VI. Leave to Amend

Wiley requests leave to amend her SAC on appeal. She does not carry her burden to explain how the complaint could be amended to survive. However, we grant her leave to amend her section 1983 claim but not any other cause of action.

"When a demurrer is sustained without leave to amend, 'we decide whether there is a reasonable possibility that the defect can be cured by amendment: if it can be, the trial court has abused its discretion and we reverse; if not, there has been no abuse of discretion and we affirm.' [Citation.] Plaintiff has the burden to show a reasonable possibility the complaint can be amended to state a cause of action." (*Hamilton v. Greenwich Investors XXVI, LLC* (2011) 195 Cal.App.4th 1602, 1609.) "The appellant has the burden to identify specific facts showing the complaint can be amended to state a viable cause of action. [Citation.] An appellant can meet this burden by identifying new facts or theories on appeal." (*Minnick v. Automotive Creations, Inc.* (2017) 13 Cal.App.5th 1000, 1004; Code Civ. Proc., § 472c, subd. (a).)

First, we are unpersuaded by Wiley's claim that she had no opportunity to request leave to amend at the hearing on the demurrer because the trial court asked no questions of her counsel. The trial court asked for argument from Wiley's counsel, but he submitted on the papers. Counsel should know that it was his duty to request amendment in court, even if unprompted by the trial judge. It is not the trial court's duty to anticipate all issues a party wishes to, or must, raise.

34.

Further, Wiley's request for leave to amend in her opposition to the demurrer was insufficient. She never identified any new facts or theories she could allege to cure the deficiencies in the SAC's allegations. The trial court was not required to undergo this analysis on her behalf, yet it granted leave to amend as to some causes of action with respect to certain defendants, nevertheless. For this reason, we do not agree that the court abused its discretion. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [denial of leave to amend is reviewed for abuse of discretion].)

Second, on appeal, as respondents observe, Wiley does not carry her burden to show how the SAC could be amended to state a viable cause of action. Wiley merely requests leave to amend after listing various deficiencies in the SAC this court might find. She does not explain any new facts or theories she could allege that would cure any issues. Though she does suggest, in her reply brief, that she could plead her causes of action for intentional infliction of emotional distress and negligence "as subsets of her Bane Act claim," this would not ameliorate the fatal fact that Whiting and Komin are immune because the Bane Act's amendment does not retroactively apply to them. Nor does Wiley, in her 30-page discussion in her reply brief, explain any other way in which she could amend the SAC to cure its deficiencies.

We agree with Wiley, however, that, based on the procedural history, this was the first time that Wiley's factual allegations and legal theories were tested. Though not technically the original complaint, Wiley's allegations and theories as to respondents were untested prior to the SAC. Generally, for an *original* complaint, courts should grant leave to amend unless the complaint shows an incapability of amendment on its face. (*Tarrar Enterprises, Inc. v. Associated Indemnity Corp*. (2022) 83 Cal.App.5th 685, 688–689.) Fairness dictates we treat the SAC as Wiley's original complaint.

Given Wiley's sixth, tenth, eleventh, and twelfth causes of action, as discussed, are barred by Government Code section 821.6's statutory immunity, we see no plausible

amendment that would permit these causes of action to survive. We deny Wiley's request for leave to amend as to these causes of action.

However, unlike Government Code section 821.6, a categorical bar to tort liability, the federal standard for qualified immunity applies only if an officer has not violated a federal statutory or constitutional right. (*District of Columbia v. Wesby*, *supra*, 583 U.S. at pp. 62–63.) Thus, if Wiley were to plead sufficient facts to support a claim for malicious/retaliatory prosecution under section 1983 in violation of her First Amendment rights, she could plausibly overcome the presumption of qualified immunity. Given the SAC does not plainly demonstrate an incapability of amending the first cause of action, we grant Wiley leave to amend the SAC's first cause of action for a violation of section 1983.

## VII. Motion to Strike

Wiley argues that, because the trial court erroneously sustained the demurrer to Wiley's causes of action, the court erroneously granted defendant's motion to strike her punitive damages claims.[20] We disagree.

Even if the trial court overruled the entirety of defendants' demurrer, the court could have granted defendants' motion to strike the punitive damages claims. Wiley does not explain with any cogent legal argument how our reversal of the court's decision on the demurrer would impact its ruling on the motion to strike, or why the court erred in its ruling. (*County of Sacramento v. Singh* (2021) 65 Cal.App.5th 858, 861 [treating as forfeited any "point that is not supported by cogent legal argument"].) Wiley leaves it to

---

[20] Though we conclude Wiley forfeits any appeal as to the motion to strike given she fails to provide any cogent legal argument that the trial court erred, we observe that various portions of the motion to strike were granted *with leave to amend*. "Generally, an order granting a motion to strike with leave to amend is not appealable prior to entry of judgment." (*Estate of Sanchez* (2023) 95 Cal.App.5th 331, 338, fn. 9.) To the extent Wiley appeals those portions of the motion to strike granted with leave to amend, we do not consider them. Regardless, Wiley affords us no argument as to rulings without leave to amend.

us to determine the demurrer's impact on the motion to strike, and whether the court erred in granting the motion to strike, but we do not make arguments for the parties. (*Paterno v. State of California* (1999) 74 Cal.App.4th 68, 106.)  Forfeiting any contest to the court's ruling on the motion to strike, we affirm the court's rulings it made without leave to amend.

## **DISPOSITION**

We reverse the judgment as to plaintiff's first cause of action under 42 U.S.C. section 1983 in the second amended complaint with leave to amend.

We affirm the judgment in part as to plaintiff's first, sixth, tenth, eleventh, and twelfth causes of action in the second amended complaint.

We affirm the order granting defendants' motion to strike without leave to amend.

Because defendants secured most of the relief sought, defendants are entitled to costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(3), (5).)


                                                  DE SANTOS, J.

WE CONCUR:


PEÑA, Acting P. J.


MEEHAN, J.

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| LORI ANN WILEY, <br><br> Plaintiff and Appellant, <br><br> v. <br><br> KERN HIGH SCHOOL DISTRICT et al., <br><br> Defendants and Respondents. | F086953 <br><br> (Super. Ct. No. BCV-22-101350) <br><br> **ORDER GRANTING REQUEST FOR PARTIAL PUBLICATION** |

We have reviewed the requests for publication filed by Herum Crabtree Suntag, LLP and respondents Komin and Whiting, as well as the opposition to these requests filed by appellant.

Given part III. of the Discussion in the nonpublished opinion filed in the above-entitled matter on November 26, 2024, meets the publication standards specified in California Rules of Court, rule 8.1105(c), we grant Herum Crabtree Suntag, LLP's request for partial publication.

We decline respondents Komin and Whiting's request to publish part II. of the Discussion given it does not meet the requirements for publication under California Rules of Court, rule 8.1105(c). Part II. of the Discussion does not establish a new rule of law, advance a new interpretation, clarification, criticism, or construction of a constitutional provision, statute, ordinance, or court rule, significantly contribute to legal literature, or meet any other criteria set forth in California Rules of Court, rule 8.1105(c).

IT IS ORDERED that the opinion be certified for partial publication in the Official Reports with the exception of parts II., IV., V., VI., and VII. of the Discussion.

Further, in compliance with California Rules of Court, rule 8.1120(b), the Clerk/Executive Officer of this court shall transmit copies of respondents Komin and Whiting's request for publication, the opinion, and this order to the Supreme Court.


                                              DE SANTOS, J.

WE CONCUR:


PEÑA, Acting P. J.


MEEHAN, J.